CARLETON E. HOADLEY, ADMINISTRATOR AND TRUSTEE, *vs.* ELLA TREAT BEARDSLEY ET ALS.

Third Judicial District, New Haven, January Term, 1915.

PRENTICE, C. J., THAYER, RORABACK, WHEELER and BENNETT, Js.

The meaning of language used in a will cannot be determined by an arbitrary rule of legal definition, but depends in each case on the peculiar provisions and character of the instrument in question, which must to a large extent be its own interpreter.

While the primary and usual, and therefore the presumptive, meaning of the term "issue," when used in a will as a word of purchase, includes descendants of every degree, it may have been used by the testator in the more restrained sense of "children," and when that is apparent from the language of the instrument it will be so interpreted.

A construction which will render a testamentary provision valid and operative is to be preferred to one which will turn it into an illegal perpetuity, if it be fairly susceptible of either construction.

A testatrix who died in 1887 placed substantially all her property in trust, directing semi-annual payments of $200 to be made to each of three sisters and one brother, with a substitute provision for the payment of $100 every six months to a daughter of one of the sisters in the event of her mother's death, and a like sum to the daughter of her brother in case of his death. Fifteen years after her decease each of four nephews and the wife of a fifth were to receive $100 every six months to help educate and support their children. Ten years after the testatrix's death, "or as soon after the expiration" of that period "as sufficient funds accumulate," $4,000 was to be paid to a certain church, with another $4,000 to the same beneficiary "as soon as sufficient funds accumulate." After further bequests amounting to $4,500, expressed in the same terms, the will declared that "twenty-five years after my decease all the remainder of my estate both real and personal, including any funds arising from the failure of any of the above objects, shall be equally divided by the trustee between the legal issue of my said nephews and niece" to hold forever. A codicil used the words "issue" and "lawful issue" of nephews, to describe those who were unmistakably their children. In a suit to construe the will and codicil it was *held:*—

1. That the gift of the remainder to the "legal issue" of the nephews and niece, was one to their children, which vested in point of interest immediately upon the death of the testatrix, although the

Hoadley *v.* Beardsley.

right of enjoyment was postponed for the period of twenty-five years; and that being a class gift it opened to let in after-born children until the termination of the trust period.

2. That the trust created by the will did not offend the rule of the common law against perpetuities in force in this State, since there was no direction, express or implied, for an accumulation of income, nor any accumulation of income in fact except such as was purely accidental and due to the generous fund provided by the testatrix for the satisfaction of her bounties; nor was there any express gift of accumulated income in the bequest of the remainder to the children of nephews and niece.

3. That such income as had actually accumulated, not having been otherwise disposed of by the testatrix, belonged to those in whom the beneficial interest in the fund itself was vested, and passed with it to the residuary beneficiaries.

4. That the residuary estate was to be divided among the children of the nephews *per capita* and not *per stirpes.*

5. That the interest of the nephews and niece necessarily ceased upon the expiration of the trust period of twenty-five years, when the ultimate owners took the *corpus* of the fund.

6. That the will conferred no power upon the trustee to sell real estate forming part of the trust property, in order to make a more convenient distribution among the remaindermen.

Trusts for accumulation must be strictly confined within the limits of the common-law rule against perpetuities, otherwise they will be held void.

Where the period during which there is no vesting is measured in no part by a life or lives in being, its maximum is twenty-one years.

Argued January 22d—decided March 26th, 1915.

SUIT to determine the construction and validity of certain provisions of the will of Cynthia M. Merrill, late of New Haven, deceased, brought to and reserved by the Superior Court in New Haven County, *Case, J.,* upon the facts alleged in the complaint, for the advice of this court.

Cynthia M. Merrill, late of New Haven, died August 29th, 1887, leaving an estate consisting of both real and personal property, and a will and codicil duly probated. By the earlier portions of her will, dated July 28th, 1885, she disposed of her household effects and wearing apparel. All the "remainder" of her

estate she gave in trust. By the terms of this trust the trustee was directed to pay $200 every six months to each of three sisters and one brother, with a substitute provision for the payment of $100 every six months to a daughter of one of these sisters in the event of the latter's death, and also to the daughter of the brother in like event. This daughter, now Ella Treat Beardsley, is the only one of these persons now living.

The trust clause further provided that fifteen years after the testatrix's decease the trustee should pay to each of four of her nephews designated, and to the wife of a fifth, the sum of $100 every six months, to help educate and support their children. It was further provided that ten years after the testatrix's death, "or as soon after the expiration of ten years as sufficient funds accumulate," there should be paid to the trustees of the Methodist Episcopal Church, on Great Hill, in the town of Seymour, the sum of $4,000, to be held by it for the support of the ministry in that church, and further, that "after the payment of the aforesaid $4,000, as soon as sufficient funds accumulate, the trustee shall pay" to the trustee of said church a further sum of $4,000, to be held by the church in trust for purposes indicated. The trust clause then proceeds to direct that "as soon as sufficient funds accumulate after the payment of" the $4,000 last named, there should be paid to Hart D. Munson the sum of $500 in compensation for services to be rendered in connection with the $4,000 gift last named. Following this provision is one that "next, in order, as soon as sufficient funds accumulate, the trustee shall pay to the wardens and vestrymen of the Protestant Episcopal Church in Quakers Farms, in the town of Oxford, the sum of $4,000," to be held in trust for the support of the ministry in that church.

Next comes the following provision: "And twenty-five years after my decease, all the remainder of my estate, both real and personal, including any funds arising from the failure of any of the above objects, shall be equally divided by the trustee, between the legal issue of my said nephews and of my said niece, Ella A. Treat to be theirs, to have and to hold forever."

The will concludes with an expression of desire that the accounts of the trustee be at all times open to inspection, and the appointment of an executor.

The codicil, dated March 4th, 1886, aside from its formal paragraphs, is as follows: "In case of the death of any one of my nephews mentioned in said will, the portion of $200 required to be paid as mentioned in said will for the benefit of their lawful issue shall be paid directly to said issue or their guardian for the purpose mentioned in said will for their benefit."

The said nephews and niece referred to in the gift over, above recited, were named in the early provisions of the will. The nephews were five in number; two of whom are now living, and all of them survived the testatrix. Each of these nephews had from one to four children, seventeen in all. Of these, thirteen were living at the time of the execution of the will and codicil and at the date of the testatrix's death. Four were born subsequently. All of the seventeen children survived the twenty-five year period. Three have deceased since that time, and administrators have been appointed upon their respective estates. The niece, Ella A. Treat, now Mrs. Beardsley, is still living. She has no children or descendants, and had none at the date of either the will or codicil.

Within a period of fifteen years after the testatrix's death all of the trusts had been fully executed, save those involved in the payment of annuities, and all

annuities due at that time had been fully paid. These annuities have since been paid down to the end of the twenty-five year period, but none since. The trust fund, including both real and personal property, now in the hands of the plaintiff, amounts to more than $100,000. What it was when originally received by the trustee does not appear in the record, save as it appears that the personal estate amounts to slightly more than it did at the time of the testatrix's decease. At the time of Mrs. Merrill's decease her estate yielded an annual income slightly in excess of $4,000.

The following questions are presented for the advice of the Superior Court:—

"First. Whether any legal effect can be given to the residuary clause of said will referred to in paragraph 20 [of the complaint], and whether all or any part of said section is or is not void.

"Second. Whether the trust created, or which it was attempted to create, in and by said residuary clause, is valid, legal and operative, and capable of being carried out in any legal manner, and if so, how; and whether the trust thereby created, or which it was attempted to create, is now a valid and subsisting trust, and whether the same is not void by the statute of perpetuities in existence at the time of the death of said testatrix.

"Third. Whether the trust created, or which it was attempted to create, is not void by reason of the general equitable rule against perpetuities.

"Fourth. What is the meaning of the words 'legal issue' in said residuary clause of said will.

"Fifth. Whether, if said residuary clause in said will is valid, and not void, the 'legal issue' of said niece and nephews referred to in said clause take under the same *per stirpes* or *per capita*.

"Sixth. Who are entitled to said residuary estate and

in what share or proportions, and to whom shall the same be conveyed or distributed, and in what proportions.

"Seventh. Whether, if said residuary clause is valid, legal and operative, the plaintiff has power as trustee, for the better distribution of said property, to sell the real estate of which the estate of the said testatrix in part consists.

"Eighth. For how long is the plaintiff required to make the payments provided for in the following clause of said will, to wit: 'Fifteen years after my decease the trustee shall pay to each of my aforesaid nephews, excepting R. Edward Treat, the sum of one hundred dollars, every six months, to help educate and support their children; and he shall pay the sum of one hundred dollars every six months to Ida, wife of R. Edward Treat, to help educate and support the children of R. Edward Treat,' and when is the duty, imposed on said trustee to make the said payments recited in said clause, to cease.

"Ninth. Under the clause providing that if Ella A. Treat survives her father, William E. Treat, the trustees shall pay to her the sum of $100 every six months during her life or until the final settlement of the estate of the testatrix, is said Ella A. Treat, known also as Ella Treat Beardsley, entitled to payments beyond the period of twenty-five years after the death of the testatrix and if so for how long?"

*Carleton E. Hoadley* and *Philip Pond*, for the plaintiff.

*William B. Arvine* and *George E. Beers*, for Florence G. Treat *et als.*

*John W. Bristol*, with whom was *David L. Daggett*, for Carrie E. Taylor *et als.*

*Robert L. Munger*, with whom was *Arthur R. Mc-Ormond*, for Atlanta Smith Haines *et als.*

*Charles G. Root*, for Ella Treat Beardsley.

*Edwin S. Pickett*, for estates of Eunice E. Munson and Betsey A. Downs.

*John S. Pullman*, for the estate of Harriet E. Sanford.

*William F. Henney*, with whom was *Louis M. Rosenbluth*, for Ruby M. Coburn and the estate of Rutherford S. Treat.

PRENTICE, C. J. The plaintiff, as trustee under the will of Cynthia M. Merrill, has in his hands property of her estate amounting to upward of $100,000 in value. It is in part real and in part personal, and is made up of the residue of her estate originally given in trust, and accretions thereto by reason of the net income having been in excess of the amounts thereof required to be expended in the execution of the trust.

The questions presented for advice all relate to the disposition of this property. The heirs at law of the testatrix contend that all of it is her intestate estate ready for distribution as such. The children of certain nephews claim to be entitled to it under a provision of the will which reads as follows: "And twenty-five years after my decease, all the remainder of my estate, both real and personal, including any funds arising from the failure of any of the above objects, shall be equally divided by the trustee, between the legal issue of my said nephews and of my said niece, Ella A. Treat to be theirs, to have and to hold forever."

The answers to all the questions propounded, save only a few of minor importance, are to be determined

by the construction and legal effect' to be given to this testamentary provision. The contention of the heirs at law rests upon two propositions: (1) that the provision is void as being in contravention of the statute against perpetuities; and (2) that it is invalid as embodying a trust for accumulation covering a period not confined within the limits of the common-law rule against perpetuities.

The first of these propositions depends upon the meaning to be attached to the descriptive title "legal issue," as used in that portion of the will. Following the English rule, we have held that the primary and usual, and therefore presumptive, meaning of the term "issue," when used as a word of purchase, includes descendants of every' degree. *Bartlett* v. *Sears,* 81 Conn. 34, 39, 70 Atl. 33; *Perry* v. *Bulkley,* 82 Conn. 158, 164, 72 Atl. 1014; *Davenport* v. *Hanbury,* 3 Ves. Jr. 257, 258; *Leigh* v. *Norbury,* 13 Ves. Jr. 340. This, however, is not its invariable meaning, and in the interpretation of wills a more restrained one, making it synonymous with "children," will be given to it where it appears that the testator so used it. *Mitchell* v. *Mitchell,* 73 Conn. 303, 308, 47 Atl. 325; *Russell* v. *Hartley,* 83 Conn. 654, 664, 78 Atl. 320; *Palmer* v. *Horn,* 84 N. Y. 516, 519. "The meaning of language used cannot be determined by an arbitrary rule of legal definition, but depends in each case upon the peculiar provisions and character of the special will in question, which must to a large extent be its own interpreter." *Wolfe* v. *Hatheway,* 81 Conn. 181, 185, 70 Atl. 645. "If two modes of construction are fairly open, one of which will turn a bequest into an illegal perpetuity, while by following the other it would be valid and operative, the latter mode must be preferred." *Wolfe* v. *Hatheway,* 81 Conn. 181, 185, 70 Atl. 645; *White* v. *Smith,* 87 Conn. 663, 673, 89 Atl. 272.

By reference to the codicil we find that the testatrix used the terms "issue" and "lawful issue" where the persons intended to be thus described were unmistakably children, and, as it happened, the children of the very persons referred to in the paragraph under consideration. There is nothing in the will to indicate, even inferentially, that their equivalent—"legal issue"— in the latter paragraph, were used more comprehensively. Here is a strong indication that the testatrix used the words there in the same narrow sense, limited to children, in which she used similar words in the codicil. *Wood* v. *Wood,* 63 Conn. 324, 328, 28 Atl. 520; *Allen's Appeal,* 69 Conn. 702, 707, 38 Atl. 701; *Greene* v. *Huntington,* 73 Conn. 106, 113, 114, 46 Atl. 883; *Pease* v. *Cornell,* 84 Conn. 391, 399, 400, 80 Atl. 86.

But that is by no means all. She directed that the division in question be made "equally" among the persons described as the "legal issue" of the nephews and niece. This direction, in the absence of an indication of a contrary intent, looks to a *per capita* distribution. *Bisson* v. *West Shore R. Co.,* 143 N. Y. 125, 130, 38 N. E. 104; *Brittain* v. *Carson,* 46 Md. 186, 188; *Farmer* v. *Kimball,* 46 N. H. 435, 439. It is scarcely conceivable that the testatrix contemplated such a division among the issue of the nephews and niece, whatever the degree of their relationship might be. The will directs a postponement of the time of the division for twenty-five years after the testatrix's death. Thirteen children of the nephews and niece were living when the will was made. Children of these children, and of others yet unborn, might, in the natural order of events, be expected to come into being in no small numbers before the end of the twenty-five year period. If the class of distributees was to be formed of issue without restriction in the matter of degree, it might well become one of formidable proportions, and its

membership be comprised of many representatives of one parental stock, and only one or few of others. Mrs. Merrill's testamentary scheme could hardly have contemplated an equal division among the members of a class thus formed. The equal division she had in mind must have been between issue of equal degree, and that unmistakably spells children. Such an interpretation makes the provision for final distribution both simple and natural.

The gift over to the children of the nephews and niece vested in interest immediately upon the death of the testatrix, with the right of enjoyment postponed for a period of twenty-five years. It vested in the children who were then living as members of a class, which would open to admit other members, as persons answering the class description should thereafter, and until the termination of the twenty-five year period, be born. *Norton* v. *Mortensen,* 88 Conn. 28, 30, 89 Atl. 882; *Bartram* v. *Powell,* 88 Conn. 86, 89, 89 Atl. 885.

The second proposition involves an appeal to the well-established common-law principle, impliedly recognized by us in *Woodruff* v. *Marsh,* 63 Conn. 125, 137, 26 Atl. 846, and in *Connecticut Trust & Safe Deposit Co.* v. *Hollister,* 74 Conn. 228, 232, 50 Atl. 750, that trusts for accumulation must be strictly confined within the limits of the rule against perpetuities, and that, if such a trust exceeds those limits, it is void. *Thellusson* v. *Woodford,* 4 Ves. Jr. 227, 337; *Griffiths* v. *Vere,* 9 Ves. Jr. 127, 131; *Odell* v. *Odell,* 92 Mass. (10 Allen) 1, 5; *Pray* v. *Hegeman,* 92 N. Y. 508, 514; *City of Philadelphia* v. *Girard's Heirs,* 45 Pa. St. 9, 27; *Kimball* v. *Crocker,* 53 Me. 263, 272; 1 Perry on Trusts & Trustees (6th Ed.) § 393; Gray on Perpetuities (3d Ed.) § 671; 1 Jarman on Wills (6th Ed.) 308.

The rule against perpetuities forms a part of our

law. *Bates* v. *Spooner,* 75 Conn. 501, 505, 54 Atl. 305.
As applicable to cases where the period during which
there is no vesting is measured in no part by a life,
its maximum is twenty-one years. Here the final divi-
sion of the trust is not to take place until twenty-five
years after the testatrix's death, and the contention
is that the permissible period for accumulations is
thus exceeded.

This appeal to the common-law principle touching
trusts for accumulation, assumes that the will before
us embodies such a trust. We find no support for this
proposition in the will. The existence of a trust to
accumulate involves the presence of a direction, ex-
press or implied, by the creator of the trust, be he
testator or settlor, for such accumulation. We examine
this will in vain to discover such direction by Mrs.
Merrill. By it she left all of her estate, save house-
hold goods and personal belongings, to form the body
of a trust fund. The purposes for which the trust was
created were many, and many benefactions were to be
accomplished through its agency. Some of these bene-
factions called for payments of single gross sums,
while others were in the form of periodical payments
covering possibly long periods of time. Some of the
payments were to be made upon the settlement of the
estate; others were postponed in time three, ten and
fifteen years. Some were in terms directed to be made
in any event, although quite likely intended to be made
out of the income; others had this intent more clearly
indicated, in that they were made conditioned upon
the accumulation of income being sufficient. Those
of the latter sort total $12,500. The others include a
few gross sums and semi-annual payments which might
amount to $2,800 a year. These provisions made,
she followed them with the one under discussion.
Neither in that or elsewhere is there either an express

direction for the accumulation of unexpended income, or a gift of such accumulation, or of an accumulated fund from which a direction to accumulate might be implied. The paragraph simply gives to the legal issue of the nephews and niece the "remainder" of her estate, "including any funds arising from the failure of any of the above objects." The basic fund thus given, it is to be noted, is described as "the remainder of my estate," which is the identical term used by the testatrix in describing the principal of the fund originally given in trust. The accumulations referred to are those, and those only, "arising from the failure" of gifts for other objects, readily referable to her gifts of gross sums not made chargeable upon income.

There have been accumulations, and the fund now in the trustee's hands is partly due to them. But the reason for them is not that the testatrix commanded them, but that she provided such a generous fund for the satisfaction of her benefactions that the execution of the trust did not exhaust the income coming into the hands of the trustee, and this excess has remained in his hands undisposed of. Whatever accumulation there has been has been purely incidental and accidental. It has not resulted either from a compliance with the testatrix's directions, or, in so far as appears, in the execution of her plan or purpose. We have not, therefore, a trust for accumulation to deal with, but only incidental accumulations in fact, with the question to determine as to who is entitled to them.

This aspect of the case disposes of any controversy as to the disposition of the principal of the fund. The taint which might attach to it, and the fate which might have attended it had the testatrix incorporated it into a trust for a twenty-five year accumulation, with a gift of the accumulated fund, are thus escaped. It is not interwoven into a testamentary scheme in such

a way as to create a situation which the law frowns upon. The testatrix devoted it to certain legitimate trust uses for a period of twenty-five years. There was nothing unlawful in that. *Loomer* v. *Loomer*, 76 Conn. 522, 527, 57 Atl. 167. She provided for a termination of the trust at the end of that period, and made a gift over to children of persons in being. This it was competent for her to do. She did no more. The gift of the fund was a valid one.

It remains to inquire concerning the income which has accumulated and is in the trustee's hands. To whom does it belong? The children had a vested interest in the fund during the whole period of the accumulation. The testatrix had not directed either that these sums should be used in the execution of the trust, or accumulated, or that they should pass at any time to any one. Naturally, being otherwise undisposed of, they would belong to those in whom the beneficial interest in the fund was vested, and, there being no provision for accumulation, the excess would be held by the trustee subject to the reasonable call of those entitled to it. The fact that the call had not been made would not change the rights of the parties. 1 Perry on Trusts & Trustees (6th Ed.) § 396. The trust was one which concerned the residue of the testatrix's estate. The gift over was of that residue, and any unexpended income not otherwise disposed of went with it to the residuary beneficiaries. *Thellusson* v. *Woodford*, 4 Ves. Jr. 227, 340.

The children of the nephews are in disagreement as to the basis of division between them. Some contend that is should be *per capita;* others *per stirpes.* "The general rule is that by a bequest to the children of A. and to the children of B., the children take *per capita* and not *per stirpes,* in the absence of words indicating a different intention." *Hill* v. *Bowers,* 120 Mass. 135,

136. "Where a gift is to the children of several persons, whether it be to children of A. and B., or to the children of A. and the children of B., they take *per capita*, not *per stirpes*." 2 Jarman on Wills (6th Ed.) 1051; *McIntire* v. *McIntire*, 192 U. S. 116, 121, 24 Sup. Ct. Rep. 196. "In the case of a gift to a class, where the proportionate share of each member is not determined by the will, distribution *per capita*, rather than by representation *per stirpes*, will be had." Gardner on Wills, p. 455; *Post* v. *Jackson*, 70 Conn. 283, 286, 39 Atl. 151. The force of these considerations, which is not diminished by anything in the will, but strengthened by the provision that the division should be made *equally* between the children, dictates that the division should be *per capita*.

The testatrix directs that the trust fund should be distributed to ultimate owners twenty-five years after her death. The termination of the trust at that time was by necessary implication thus decreed. This termination of the trust automatically placed a limitation upon the duration of the direction to make periodical payments to the nephews and niece. The fund gone, there would remain nothing to administer. The nephews and niece are not entitled to these payments subsequent to the close of the twenty-five year period.

The trustee has no power, in the absence of competent judicial authority, to sell, for the purposes of more convenient distribution, the real estate which forms a portion of the trust property in his hands.

The Superior Court is advised: (1) that by the words "legal issue," in said trust clause, the testatrix meant children; (2) that the trust created by said clause was a valid one; (3) that the children of the nephews, and the executors or administrators of such of them as are now deceased, are entitled to the fund, principal and income, now in the hands of the trustee, to be

divided between them equally *per capita;* (4) that all right to receive periodical payments by the nephews and niece of the testatrix in the execution of the trust ceased at the end of twenty-five years from and after her decease; and (5) that the trustee is without power, conferred by the will, to sell real estate for the purposes of the distribution of the fund in his hands.

No costs in this court will be taxed in favor of any of the parties.

In this opinion the other judges concurred.