EDMUND L. MOONEY ET AL., EXECUTORS AND TRUSTEES, (ESTATE OF JESSIE K. SHUTTLEWORTH) *vs.* SHELDON H. TOLLES, SECOND, ET AL.

Third Judicial District, Bridgeport, October Term, 1929.
WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

(1)

Argued October 31st, 1929—decided March 3d, 1930.

Second. I give, devise and bequeath to my trustees hereinafter named, or to the survivor or successor of them, or to either of them who may qualify and act, the sum of one hundred thousand dollars ($100,000), in trust to invest the same and keep the same invested, and pay over the income therefrom to my husband, Herbert W. Shutttleworth, in quarterly payments during his natural life. On the death of my said husband, said principal sum shall be divided into two portions, and thenceforward my trustees, or the survivor or successor of them, shall invest the principal of one of said portions and keep the same invested during the lifetime of my son Sheldon, and pay over the income therefrom in quarterly payments during the natural life of my son Sheldon, to his lawful child or children, in equal shares, and upon his death, to pay over the principal of said portion to his lawful child or children, in equal shares, or if he leaves no lawful child, then to and among the lawful issue of my son King, in equal shares, per stirpes and not capita; the

other of said portions, after the death of my said husband, shall be invested by my said trustees or trustee, or the survivor or successor of them, who shall keep the same invested and pay over the income therefrom in quarterly payments during the lifetime of my son King, to his lawful child or children, in equal shares, and on the death of my son King, to pay over the principal of said portion to the lawful child or children of my son King, in equal shares, or if my son King leaves no lawful child, then to and among the lawful issue of my son Sheldon, per stirpes and not per capita.

"Third. I give and bequeath to my trustees hereinafter named, or to the survivor or successor of them, or to either of them who may qualify and act, the sum of twenty-five thousand dollars ($25,000), in trust, to invest the same and keep the same invested, and to pay over the income therefrom, to Edna K. O'Sullivan, of Newport, Rhode Island, in quarterly payments during her natural life, and on her death to pay over the principal to my husband, or if he be then dead, to the children of my sons Sheldon and King, per stirpes and not per capita.

"Sixth. I exercise the right and power conferred upon me under the will of my mother, Elizabeth F. King, dated the twenty-first day of July, 1914, as follows: Aside from the sum of one hundred thousand dollars ($100,000) given to me absolutely under the terms of the said will, and aside from the property which I received under the trust deed executed by my mother to The Union and New Haven Trust Company, as trustee, dated April 8, 1915, I give, devise and bequeath to the lawful issue of my sons, Sheldon and King, the property which was delivered to me by The Union and New Haven Trust Company, as administrator cum testamento annexo of my mother, on June 12, 1923, as the property which my mother received from the estate of her husband, my father. If any of the said property is reinvested during my lifetime, the reinvestment shall take the place of the property so delivered to me.

"Ninth. All the rest, residue and remainder of my property, real and personal, wheresoever situated, shall be divided into two portions, one of said portions I give, devise and bequeath to my trustees hereinafter named, or to the successor or survivor of them, or to either of them who may qualify and act, in trust, to invest the same and keep the same invested, and to pay over the income therefrom during the lifetime of my son Sheldon, in quarterly payments, to his child or children, in equal shares, and on the death of my son Sheldon, to pay over the principal to the lawful child or children of my son Sheldon, or if my son Sheldon leaves no lawful child, then to and among the lawful issue of my son King, per

stirpes and not per capita; the other of said portions, I give, devise and bequeath to my trustees hereinafter named, or the successor or survivor of them, or to either of them who may qualify and act, in trust, to invest the same and keep the same invested and to pay over the income therefrom to the lawful child or children of my son King, in equal shares, during his natural life, in quarterly payments, and on his death to pay over the principal to his lawful child or children, in equal shares, or if he leaves no lawful child or children, then to and among the lawful issue of my son Sheldon, in equal shares, per stirpes and not per capita."

*J. Dwight Dana,* for the plaintiffs.

*Harrison Hewitt* and *Mary E. Manchester,* for the defendants Laurel Tolles *et al.*

*James E. Wheeler,* for the defendants Sheldon H. Tolles, Second, *et als.*

*William R. Pitkin,* for the defendants Sheldon King Tolles *et al.*

HINMAN, J. The will discloses no intention to attach any meaning to "lawful child or children"—the term generally used throughout the will—distinctive from "child or children" as employed once, apparently by inadvertence, in Article Ninth, and "children" appearing in Article Third.

"Child or children" manifestly refers and applies and is limited to those standing in the position of first degree. "Issue" is used in the Second, Sixth, and Ninth Articles of the will not in the restricted sense of children but in its primary, usual, and more comprehensive meaning as including descendants in every degree. *Hoadley* v. *Beardsley,* 89 Conn. 270, 277, 93 Atl. 535; *Bartlett* v. *Sears,* 81 Conn. 34, 39, 70 Atl. 33. The plan of disposition contemplated by the testatrix as to the trust fund created by the Second Article was,

clearly, that after the death of her husband, the income of one half of the fund should be paid, during the life of each of her sons respectively, to his child or children in equal shares, and upon his death the principal be paid over to such child or children, if any be living at the decease of such son; but that, if either son should die leaving no child or children, the portion of the principal which would thereupon have been paid to the child or children of such son, had any been living, shall be paid to the "lawful issue" of the other son, that is, to the then living descendants of the latter most nearly related to him, although such relationship be more remote than that of child or children. Article Ninth embodies a plan similar in this respect, as to the residuary estate.

The principal question is whether the provisions for the child or children and the issue of Sheldon Tolles includes his adopted daughter, Laurel Tolles. Whether the testatrix intended to include in the gift to children an adopted child depends upon the intention on the part of the testatrix, ascertained from the reading of the will, in the light of all the surrounding circumstances. *Middletown Trust Co.* v. *Gaffey*, 96 Conn. 61, 67, 112 Atl. 689; note, 27 L. R. A. (N. S.) 1158. In the determination as to this intention several considerations are to be resorted to. One of these is the adoption statute in effect in the State at the time, it being presumed that the testatrix knew and acted in contemplation of the reciprocal rights and duties resulting from the existing statute. "Where the statutes are broad and comprehensive in their terms, the testator is generally held to have intended to include a child of adoption within the term 'child or children'; and in those States having a more restricted statute . . . . [such as those providing that an adopted child, while inheriting from an adopting parent, shall not be

capable of taking from other kindred of the adopting parent, by inheritance or by right of reversion] an opposite conclusion is arrived at, in the absence of other elements showing or tending to show an intent to the contrary." 27 L. R. A. (N. S.) note, 1159, and cases therein set out. "Our statute (§ 4879) . . . belongs to the broad class. By it the adopted child · becomes, by the fact of adoption, the child in name and in law of its parents, with all the reciprocal rights and duties existing between them as between natural child and parent, and with the right of inheritance between parent and child and their relatives, the same as though such adopted child were the natural child of such adopting parent." *Middletown Trust Co.* v. *Gaffey, supra*, p. 70. It was stated in that case that if a presumption of intent to use the term "child" in a will as including a child by adoption were to arise from the assumption of knowledge of the law of adoption, it would be out of a statute as broad as ours, and that even though, as in that case, this presumption is held not to arise, yet the existence of the statute "is one of the facts to be considered among the circumstances and environment surrounding [the testator]."

An intention that Laurel should be included as a child of Sheldon is clearly indicated by the plan evinced by Articles Second and Ninth of the will. This contemplated that, while the sons were to take no direct benefit, either present or prospective, they were to be relieved, as to each of their children, of the expense of support and education to the extent of his or her share, immediately available, of the income from the residuary estate, under Article Ninth, and, on the death of testatrix's husband, income from the trust fund created by Article Second. If Laurel be precluded from participation in the income of the portion of these funds allotted to the child or children of

Sheldon, this burden, with respect to her, would be imposed upon him, without recourse to the income paid to Sheldon King Tolles, his only natural child if no more be born to him, however much more than sufficient for the purposes of Sheldon King the income received by him might be. A further consequence would be the destruction of that equality among the children of each son, both as to income and ultimate participation in principal, which the will clearly indicates. An intention to use the word children in the inclusive sense of all who occupied, to and with each of the sons of the testatrix, the position of reciprocal obligations and benefits of a child of such son, whether by blood or adoption, is in harmony with, and its use in that sense is necessary properly to effectuate, this general plan and manifest purpose.

Two further rules of testamentary construction are relevant. "One of these is that heirs at law are not to be disinherited unless the intent to do so is clear and strong. . . . Again, as an aid to construction where the meaning is in doubt, that construction will be adopted which most nearly conforms to the statute of distributions." *Ansonia National Bank* v. *Kunkel*, 105 Conn. 744, 752, 753, 136 Atl. 588, and cases cited. In the present case the statutory right of Laurel Tolles to inherit from the testatrix—the mother of her adopting parent—and to share equally with the natural child of such parent, under the statute of distributions, is undoubted.

Another consideration is that the presumption that an adopted child was within the intended bounty of his adopting parent does not prevail where the testator is a stranger to the adoption. *Middletown Trust Co.* v. *Gaffey, supra*, p. 71. It is significant, however, that in practically all of the cases where this distinction has been given effect, it appears, as it did in the *Gaffey*

case, that the adoption took place long after the testator's death, and often under circumstances savoring of an attempt to create an heir for the purpose of defeating a gift over conditioned on the nonexistence of children at the termination of the first limited estate. *Wilder* v. *Butler,* 116 Me. 389, 102 Atl. 110, L. R. A. 1918B, 119, and note, p. 123; *Puterbaugh's Estate,* 261 Pa. St. 235, 104 Atl. 601, 5 A. L. R. 1277; *In re Leask,* 197 N. Y. 193, 90 N. E. 652, 27 L. R. A. (N. S.) 1158; *Reinders* v. *Koppelman,* 94 Mo. 338, 7 S. W. 288; *Jenkins* v. *Jenkins,* 64 N. H. 407, 14 Atl. 557; *Parker* v. *Carpenter,* 77 N. H. 453, 92 Atl. 955; *Cochran* v. *Cochran,* 43 Tex. Civ. App. 259, 95 S. W. 731; *Lichter* v. *Thiers,* 139 Wis. 481, 121 N. W. 153; *New York Life Ins. & Trust Co.* v. *Viele,* 161 N. Y. 11-22, 55 N. E. 311. It is fairly to be inferred from the authorities that, in determining. whether the adopted child was in contemplation of a testator other than the adopting parent, the weighty consideration was the fact that the adoption, being subsequent to the testator's death, was not known to him, together with the effect of it upon the distribution of the estate, rather than that the testator was not the adopting parent and might be presumed to be likely to intend to favor his own blood as against a stranger thereto.

In the *Gaffey* case it was said (p. 70) that the fact that the adoption occurred subsequent to the death of the testator was "a circumstance of controlling importance. The testator did not know of the adoption. And we think it inconceivable that he intended by his bounty to the children of Eugene [his son] to include one who might, by adoption, years after his own death, become a child of Eugene." Conversely, adoption prior to the execution of the will or a considerable time before the death of the testator, coupled

with knowledge, on his part, of such adoption and approval thereof, are considerations persuasive of an intent to include the adoptee as a child of the adopting parent. *Ansonia National Bank* v. *Kunkel, supra.* In the present case the only natural child of testatrix's son Sheldon was born five years before her will was made. Laurel, when only one year old, came to live with Sheldon more than a year and a half, and was adopted nearly a year, before the death of the testatrix. Mrs. Shuttleworth knew and approved of the adoption, and must be assumed to have known, also, the effect thereof in rendering Laurel in all legal respects the equivalent of a natural child of Sheldon. If she desired to deprive her of participation, as such, in her bequests for the children of Sheldon she had ample time and opportunity, between the adoption and her decease, to effect such discrimination by adequate provisions through a change in her will. Her failure to do so is not without significance. *Hartford-Connecticut Trust Co.* v. *Lawrence,* 106 Conn. 178, 187, 138 Atl. 159; *Bill* v. *Payne,* 62 Conn. 140, 142, 25 Atl. 354.

We conclude, therefore, that the intention of the testatrix was such that the provisions in Articles Second and Ninth for the child or children of Sheldon Tolles, and, for the same reasons, the contingent gifts over to his "lawful issue," made therein, include his adopted daughter, Laurel Tolles. The same is true of the contingent gifts in Article Third to the children of Sheldon and King Tolles.

As to Article Sixth, its interpretation is affected by the consideration that, as distinguished from the remainder of the will, the testatrix is therein exercising a power of appointment under the will of her mother, Elizabeth F. King, and with reference to property which, as appears from both wills, was derived by Mrs. King from her husband, and for that reason was seg-

regated from her other property which she gave to her daughter, Mrs. Shuttleworth, absolutely, and was made the subject of special disposition. As to this, she gave Mrs. Shuttleworth a life estate, only, "with power to dispose of the same by her will. If she leaves no will then the same shall go to my grandsons, now living [Sheldon Tolles and King Tolles] . . . or their lawful issue." It is obvious that the intention of Mrs. Shuttleworth, in exercising this power of appointment by Article Sixth of her will, was to give effect to the disposition indicated by her mother, in *her* will, so far as was consistent with her own desire and purpose to exclude her sons, Sheldon and King, from direct participation in any of the property passing under her will. It is significant that, in so doing, she makes the same characterization of the legatees as did her mother —"the lawful issue" of my "sons." Both apparently regarded and treated this particular property as in the nature of ancestral estate. Since Mrs. King's will was made in 1914 and she died in January, 1921, seven years before the adoption of Laurel Tolles, important considerations which we have mentioned as signifying an intention on Mrs. Shuttleworth's part to include her, militate against any such intention in the mind of Mrs. King. We think, therefore, that as employed in this Article, "lawful issue" is to be construed, as it would be under the will of Mrs. King, as not including Laurel Tolles, and that those who take under this Article are, therefore, Sheldon King Tolles, the natural son of Sheldon H., and the three sons of King Tolles.

The further question is raised as to whether the property carried by Article Sixth should be distributed between the children of Sheldon and King per stirpes or per capita. As to this, we have held in numerous cases that, in the absence of any direction to the contrary, the per stirpes rule of distribution should be

adopted. *Stamford Trust Co.* v. *Lockwood,* 98 Conn. 337, 345, 346, 119 Atl. 218, and cases there referred to. In most of these there was some implication of an intent to make a per stirpes distribution, though no explicit direction to that effect, and in some the unequal consequences of a per capita distribution were pointed out as one of the considerations in favor of adopting the per stirpes rule. As in *Stamford Trust Co.* v. *Lockwood,* both of these considerations are present in the instant case. Elsewhere in the will where the situation leaves the method of distribution open to any doubt, division "per stirpes and not per capita" is prescribed. The effect of application of the per capita rule would be to work a pronounced inequality as between the two branches of the family represented by the sons of the testatrix, respectively, since thereby the issue of one of these sons, King Tolles, would receive three fourths of the property passing under Article Sixth, while the issue of the other son, Sheldon, would receive only one fourth—a result inconsistent with that equality between these two branches of the family which characterizes all of the other provisions relating thereto. In *Hoadley* v. *Beardsley,* 89 Conn. 270, 93 Atl. 535, it was held that under a provision that the residuary estate be equally divided between the issue of the (five) nephews and of the niece of the testatrix, a per capita division was intended. But both of the above-mentioned considerations appear to have been lacking and the provision that division should be made *equally* between the children was regarded as strengthening a conclusion that per capita distribution was intended. (p. 283). See also *Post* v. *Jackson,* 70 Conn. 283, 286, 39 Atl. 151.

All the parties are in agreement, and we concur, that the remaining questions (f, g, and h) should be

answered in the affirmative. As to question (a) we answer Yes, to both queries; (b) Yes; (c) No; (d) one half to the children of Sheldon (not including Laurel Tolles) and one half to the children of King; (e) Yes.

No costs will be taxed in this court to either party.

In this opinion MALTBIE, HAINES and BANKS, Js., concurred.

WHEELER, C. J. (dissenting in part). I am obliged to dissent from the opinion of the majority in its holding that the adopted daughter of Sheldon, the son of the testatrix, is included among his "lawful children" and if he leave none to the "lawful issue" of her son King as provided in articles second and ninth of the will of the testatrix, and in its holding that the adopted daughter of Sheldon is included among the children of "my sons Sheldon and King" as provided in article third of her will. The determination of whether the adopted daughter was intended to be included by the testatrix among the "lawful children" or "the lawful issue" of Sheldon depends upon the ascertainment of the testatrix's intention at the time she made her will from its terms read in the light of the circumstances then surrounding the testatrix.

There is nothing in this will which gives the slightest indication that the testatrix had in mind the possibility of the subsequent adoption of a child by either of her sons, or that she intended to include an adopted child of one of her sons among the "lawful children" or "lawful issue' who were the objects of her bounty. She had two sons, King, who had three children, and Sheldon, who had one child, living at her death on December 12th, 1928, and each child was living at the making of her will on November 16th, 1926. The only fact appearing in the stipulation of facts which bears

even remotely upon the question, whether the testatrix intended to include an adopted child in these provisions of her will is the fact that about five months after the execution of her will and twenty months prior to her death her son Sheldon and his wife legally adopted a daughter with the knowledge and approval of the testatrix. The opinion of the court assumes that the testatrix must have known that the adopted child in legal relation stood upon an equality with the natural child of Sheldon and that her failure to change her will during these twenty months, thus depriving the adopted daughter of participation in her bounty, is an indication of her intention not to deprive her of sharing in her bounty. We think the opposite conclusion is the true one, if it were possible for a laywoman to make, unaided, the two assumptions my brethren require her to make. The legitimate inference to be drawn is against the position that the testatrix would have changed her will if this had not been her intention. If she inserted these provisions intending to include an adopted child there was no occasion to change her will. If at execution she did not intend this, and later learned of the adoption and approved of it and did not change her will so that it might include this adopted daughter of her son, a strong inference arises that she did not so desire or else neglected to make her will accord with her intention. If the testatrix desired this adopted daughter of her son to share in her bounty she would have changed her will to so provide, unless delay, illness, negligence or the like had prevented its change. If she must be presumed to have known the law of adoption and to have used the terms "lawful child" and "lawful issue" as including a child by adoption she must also be presumed to have known that the only decision upon this point in this jurisdiction up to that time had deter-

16

mined, "but we do not think such a presumption can arise from the mere asumption of knowledge of the law of adoption." *Middletown Trust Co.* v. *Gaffey,* 96 Conn. 61, 71, 112 Atl. 660. The argument assumes that which is to be ascertained, namely, that the testatrix intended to include the adopted child among the beneficiaries under these provisions of the will. These assumptions require the ignoring of the necessary inferences from the facts before us. The testatrix never had the question of a possible subsequent adoption before her when she drew her will. The will bears plain witness of the skill of its draftsman. If he had contemplated the fact of an adoption and the testatrix had intended the adopted child to share in these provisions of her will it cannot be doubted that the draftsman would have made clear the testatrix's intention. The failure of the draftsman to use any language bearing this import is strongly indicative that the testatrix did not intend this contingency when she made this will. If the testatrix desired the adopted daughter of her son to share in her bounty there would have appeared in this record some fact or declaration expressive of her then intention.

A third reason advanced by my brethren is that unless these provisions of the will be construed to include the adopted daughter the burden of her care must be imposed upon her lawful father Sheldon and he be unable to use the income of these funds for her support although they will more than suffice for his natural child; and further that this will destroys the scheme of equality among the children of each son which the will contemplates and that a construction which would make the benefits reciprocal for each child, whether by blood or adoption, would be in harmony with the general plan of the will. The argument assumes that the adopted child must have been

within the testatrix's intention; it proceeds: if one of the sons of the testatrix should, after the making of the will, adopt a child, in order to preserve the scheme of equality of the will and save her father from the burden of her support, it must be held that the testatrix intended to include the adopted daughter as one of the "lawful children" and "lawful issue" in these provisions of the will. Again, the argument assumes that which we are to ascertain. Its statement is its own refutation.

A fourth reason relied upon in the opinion of the court consists of two testamentary rules of construction, one, that heirs at law are not to be disinherited unless the intent to do so is clear and strong, the other, where the meaning of a provision in a will is in doubt that construction will be adopted which most nearly conforms to the statute of distributions. Neither rule has any relation to the ascertainment of this testatrix's intention at the time of execution of her will. The fifth reason upon which the court rests its conclusion that the testatrix intended to include an adopted child in articles second, third and ninth is that the testatrix must be assumed to have made her will in the contemplation of our adoption statute, which is broad and comprehensive in its terms, and that such statutes of adoption are generally held to intend to include a child of adoption within the term "child or children." But the opinion does not hold that this testatrix must be held to have intended to include within these provisions this adopted daughter. It merely holds, in reliance upon *Middletown Trust Co.* v. *Gaffey, supra,* at page 71, that the existence of the statute "is one of the facts to be considered among the circumstances and environment surrounding him [the testator]."

It is quite true that it is one of the factors to be considered, but by itself it will not determine the tes-

tatrix's intention. Let me quote the whole of the passage from which the majority opinion quotes these two lines: "If this presumption were ever to arise, it would be out of a statute as broad as ours. But we do not think such a presumption can arise from the mere assumption of knowledge of the law of adoption. The existence of the adoption law, being part of the law at the time the testator executed the will, is one of the facts to be considered among the circumstances and environment surrounding him. The terms of the will, read in the light of the circumstances, are the source of the intention of the testator. This is an inference to be drawn from all the facts; it may not be drawn from the single fact of the existence of a broad law of adoption. The better authority accords with this view." The controlling principle which was decisive of that case was this: Where a testator makes a devise over from his own child to a child's child and the intention is not otherwise disclosed in the will, read in the light of the surrounding circumstances, the law raises a presumption that the testator intended a child of his own blood and did not intend his bounty to go to a stranger to his blood. We quote from this case at pages 66 and 69: "The term 'issue,' in a will, is to be construed as a word of purchase, unless it appears from the context and surrounding circumstances to have been used as one of limitation. Its primary, and therefore presumptive, meaning, when used as a word of purchase, is heirs of the body, and includes descendants in every degree. But when the intention of the testator, as evinced by the context and surrounding circumstances, indicates that he used the word 'issue,' not in its larger significance, but in its more restricted sense, it will be construed so as to effectuate the testator's intent and to be synonymous with children or grandchildren. *Bartlett* v. *Sears*, 81 Conn. 34, 39, 70 Atl. 33;

*Hoadley* v. *Beardsley*, 89 Conn. 270, 277, 93 Atl. 535; *Mitchell* v. *Mitchell*, 73 Conn. 303, 47 Atl. 325. . . . The testator exercises his right to dispose of his entire estate, and his will in its entirety makes clear his intention that only the children of his blood and the children of their blood should enjoy his bounty." The same presumption governs in the case before us. The entire scheme of this will is in harmony with this presumption and is indicative of the testatrix's intention to pass on her property to her own blood—her own lineal descendants.

In my opinion this case should be decisive of this point. Counsel for the adopted child assert that *Ansonia National Bank* v. *Kunkel*, 105 Conn. 744, 136 Atl. 588, is substantially similar in its facts to this case. They misread that case. There the sister of the testator, having had no child, adopted a child who was always known by her adopted mother's name until her marriage seventeen years later. The testator approved of the adoption and acted as godfather at her baptism in St. Augustine's Roman Catholic Church. He was on intimate terms with his sister and often visited her, at which times this daughter was generally present. He was always on affectionate terms with her and expressed his fondness for her and frequently visited at her home, always made her Christmas presents and visited her when she was in the hospital, making a gift of money to her. The testator gave certain real estate to his sister for her life use, and devised it at her death to "her children living at her death, to be theirs absolutely." The sister was then sixty-one years of age, no child had been born to her. For twenty-four years this adopted daughter had been a loved member of this family and treated as a daughter of this sister. These and other circumstances, which the opinion fully presents, required us

to hold that this testator used the word "issue" to include the adopted daughter among the "children" of his sister.

In article second the testatrix upon the death of her son Sheldon gave the principal of the one half to his lawful child or children, or if he leaves no lawful child, then to the "lawful issue" of her son King. She makes a similar disposition of the other half to the lawful children of King and if he leaves none to the "lawful issue" of her son Sheldon. In article ninth the testatrix makes like devises and bequests. If either son die leaving no child but leaving grandchildren, they will not take if lawful child or children have their primary meaning. This is a disposition which would defeat the entire scheme of the testatrix's will and manifestly be antagonistic to her intention. By "lawful child or children" of her sons the testatrix intended to use children in place of "issue." By no other construction could the main purpose of her will be carried out and the lawful issue of her sons receive in equal portions her devise and bequest. The same construction must be accorded to "lawful child or children" as used in article ninth, the residuary article. If used in their primary sense, the grandchildren would be disinherited and the devise and bequest go to the "lawful issue" of the other son. A like result would follow in the case of the "lawful child or children" of King.

In article third the testatrix gave and bequeathed the life use of a fund in trust and upon the death of the one having this use she gave the principal of the fund to her husband and if he be dead "to the children of my sons." What has been said as to articles second and ninth is equally applicable and controlling as to article third. There is nothing to indicate that the testatrix intended this adopted daughter to be included

among "the children of my sons." Children in this article does not have its primary meaning but must as in articles second and ninth be held to be used in place of issue, otherwise in the event that none of these children survived the testatrix but left grandchildren these would be disinherited so far as dependent upon this article, and this property then fall in the residue and go ultimately to the issue to whom we think the testatrix intended it to go when she used children in place of issue. This might produce a good result but by a devious route which the testatrix could not have contemplated, much less her skilled draftsman. The testatrix in the event each son leaves no child surviving him devises and bequeaths in article second one half of the $100,000 fund in trust and in article ninth, one half the residue to the "lawful issue" of her other son and my brethren answer that the gift over in these articles to the "lawful issue" upon the stated contingency includes the adopted daughter. The testatrix's mother devised and bequeathed the life use of the property which she received from the estate of her husband to the testatrix with power to dispose of the same by will. It was within her power to dispose of this to whomsoever she desired. The testatrix exercised this power in article sixth by devising and bequeathing to the "lawful issue" of her sons the property delivered to her "as the property which my mother received from the estate of her husband, my father." My brethren answer that the "lawful issue" of her sons did not include the adopted daughter. That is, the term "lawful issue" includes in articles second and ninth the adopted daughter and does not include her in the sixth article. In each of these three instances this term cannot be construed to mean other than descendants in any degree; in two of the instances my brethren hold that descendants of any de-

gree include the adopted daughter while in the other they hold that descendants of any degree cannot have this meaning. I am unable to comprehend this distinction after having given careful consideration to this part of the opinion. The gifts in articles second and ninth to the "lawful child or children" of Sheldon and King have a like meaning with the gift in article sixth to the "lawful issue" of Sheldon and King and neither can be construed to include the adopted daughter.

It is a rule of construction, often recognized by us, that a term used in a will by a testator more than once must be presumed to have been used in the same sense, unless it clearly appears to have been used with a contrary meaning. *Hoadley* v. *Beardsley*, 89 Conn. 270, 278, 93 Atl. 535; *Pease* v. *Cornell*, 84 Conn. 391, 399, 80 Atl. 86; *Beardsley* v. *Johnson*, 105 Conn. 98, 107, 134 Atl. 530.

I agree in the answer made by the court to this question concerning article sixth, but for the reasons given herein in construing articles second and ninth. If the answer of the court to this question is correct, it seems to me clear that the construction of the same term, "lawful issue," in articles second and ninth, must be incorrect.