NICHOLAS S. HILL, 3rd.
*vs.*
FLORENCE ACHESON HILL WRIGHT ET AL.

Superior Court        Fairfield County        File No. 59261

MEMORANDUM FILED AUGUST 5, 1943.

*Smith & Devine,* of Norwalk, for the Plaintiff.

*Marsh, Day & Calhoun,* of Bridgeport; *Maguire, Walker & Middleton,* of Stamford; and *Edward L. Kelly,* of Bridgeport, for various Defendants.

O'SULLIVAN, J. This action seeks a declaratory judgment to determine the plaintiff's rights in the estate of his father, Nicholas S. Hill, Jr. The answers to the questions he propounds turn on the construction to which the fourth, twelfth and thirteenth articles of his father's will, dated October 6, 1932, are entitled through the application of legal principles.

When the will was executed, the testator was married to Florence Acheson Hill, a woman much younger than he and hardly much older than his two children by a prior marriage. One of these children was the plaintiff, who in 1932 was thirty-four and unmarried, having previously been divorced, the other being a daughter, Isabelle Hill Guthrie, thirty-six years old and a widow. Then there were four grandchildren, Anna, ten, Isabelle, eight, and William, six, all being Mrs. Guthrie's children, and Nicholas Hill, 4th, the plaintiff's son by his divorced wife. The testator's only other near relative was a sister, Mary Mills.

When the testator died about four years later, all of the persons just enumerated survived him. His daughter still remained a widow, but his son had remarried although no child had been born of that marriage.

A reading of the will reveals quite clearly the general scheme of the testator's bounty. It was to provide his wife with

economic security for life and upon her death to bestow the bulk of his estate of a quarter of a million dollars upon his grandchildren. With this end in mind, he incorporated in his will the three articles which give rise to the claimed un- certainty of the plaintiff's status and whose validity is chal- lenged as being hostile to the rule against perpetuities. Per- haps it will do no harm to spread out these articles in this memorandum.

"Fourth: I give and bequeath to my executors and trustees hereinafter named the sum of Fifty Thousand Dollars ($50,000.) in trust nevertheless to collect the rent, income and profits therefrom, and to pay the net proceeds thereof....to my wife, Florence Acheson Hill, during her lifetime. Upon the death of my wife, Florence Acheson Hill, I direct that the principal of the above trust fund be paid into the trust fund established for the benefit of my grandchildren under Article Thirteen of this instrument."

"Twelfth: All the rest, residue and remainder of my estate....I give, devise and bequeath to my executors and trustees hereinafter named, in trust nevertheless, to collect the rent, income and profits thereof, and to pay the net proceeds therefrom to my wife, Florence Acheson Hill,....during her lifetime."

"Thirteenth: Upon the death of my wife, Florence Acheson Hill, I direct that the surviving executor and trustee....of this my last will and testament, the Chase National Bank of the City of New York, shall pay the principal of the above trust into a trust, in equal shares, per capita and per stirpes, for the benefit of my grandchildren, and I hereby nominate, constitute and appoint The Chase National Bank....and daughter, Isabelle Hill Guthrie....executors and trustees of this trust fund after the death of my wife, Florence Acheson Hill. I hereby authorize the said executors and trustees to collect the rent, income and profits therefrom and to pay the net proceeds thereof....to my daughter, Isabelle Hill Guthrie, to be used in equal shares for the benefit of my grandchildren as may in her judgment be deemed proper. I further direct the surviving executors and trustees....of this trust to pay the principal of this trust fund to each of my grandchildren, in equal proportion, when the youngest of my grandchildren then living shall have reached the age of twenty-five years; and in the event that any of my grandchildren shall have died

before the time my youngest grandchild shall have reached the age of twenty-five years leaving lawful issue then surviving, I direct that the shares of said trust fund that would have gone to said grandchild if living, shall be paid to the lawful issue of such deceased grandchild or grandchildren."

Further articles in the will provide for a legacy of $5,000 to the plaintiff "as an evidence that I bear him no ill will", and one of $30,000 to his daughter. There is also set up a trust fund of $20,000 for his sister Mary during her lifetime with the direction that upon her death the principal is to be paid "in equal shares to my grandchildren who may be living at that time, per capita and not per stirpes" with a substitutionary gift to the issue of any deceased grandchild.

The gift to the grandchildren which the plaintiff asserts is void is found in the thirteenth article. The gift is of two funds, one of $50,000 referred to in the fourth article, the other being the residue referred to in the twelfth article, each of which funds is subject to the lifetime use of Mrs. Hill. It should also be noted that the grandchildren are the beneficiaries and the remaindermen of the new trust created by the thirteenth article.

With deference to the learned counsel who have briefed their respective positions, I am unable to view the justiciable issues as they do. The plaintiff's quarrel centers, as it must, around his own legal status, which is solved once it is determined whether the gift to the grandchildren violates the rule against perpetuities. Any further controversy among the grandchildren, both those who are alive and any after-born, is a moot question and were it decided, could not be supported by the pleadings, as they now exist. *Borchard, Declaratory Judgments* (2d ed. 1941) pp. 209, 231, 445. And of this I shall have more to say later on. But I wish it understood that I go no further than to answer the questions found in the complaint.

The gift to the grandchildren is a class gift. The testator did not intend, as urged by the defendants, to limit the legatees to the four grandchildren whom he knew. So to hold would be to resort to surmise. "In construing a will the function of the court is to give effect, not to an intention which it may conclude the testator had, but to the intention which finds expression in the words he used." *Bronson vs. Pinney,* 130 Conn. .... While the circumstances surrounding the testa-

tor are proper to consider, there are none legally significant to warrant the narrowing of such a broad characterization as "my grandchildren" to the four who happened to hold that relationship to him. His attitude towards his son, evidence of which was excluded at trial, is irrelevant as to what was in his mind when he bestowed his bounty on others. And if such attitude, standing alone, might have some effect in indicating that children of his son by any future marriage were to be anathema to him, its persuasiveness is completely overshadowed by several other factors of which three might be mentioned. First, the testator expressly states that he bears no ill-will towards his son, and how can or why should we give the lie to that statement; secondly, although before his death he knew that his son had remarried and in the course of time might have children, he did not alter his will but permitted the words "grandchildren" to remain undisturbed; and thirdly, his daughter who was but thirty-six when the will was executed was still young enough to remarry and bear children, and his attitude towards his son—even assuming that, contrary to what he said, it was strained—would hardly reach a point where it would vent itself upon possible offspring of his daughter, with whom he was on the most affectionate terms.

So far, I agree with the plaintiff, namely, that the word "grandchildren" was used in its customary sense and not with the intention of limiting the number who otherwise might be included within its meaning to the four who were alive in 1932. But I cannot follow the plaintiff in his further claims.

His position is this: he insists that the trust set up for the class is legally obnoxious in that it violates the rule against perpetuities, the standard definition of which is that no interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest or (as the case may be) twenty-one years and the period of gestation. *Wilbur vs. Portland Trust Co.,* 121 Conn. 535, 537.

Because the will speaks from the death of its maker, it is as of the date of that event that one determines whether or not a gift violates the rule. Unless at that time it is a matter of certainty that an interest created by the will inevitably will vest within the period limited by the rule, the interest is void.

It has always seemed to me that one of the difficulties in

applying the rule can be avoided by fixing firmly in mind the persons whose lives are to furnish a part of the measuring period of time permitted by the rule. The lives in being must be indicated by the instrument. This the testator had done by selecting his own wife, and his two children as the persons whose lives, if in being at his death, must all terminate before the additional period of twenty-one years commences.

Viewed in this light it is apparent that as of the day on which the testator died, the number in the class would be ascertained with certainty when the last of his own two children died, if it be assumed that the class was not to close at the death of his wife. But whether the former or the latter event was to operate as a closing, the membership would be ascertainable during the lives of the plaintiff and Mrs. Guthrie, and, under certain circumstances, an additional period to cover the time of gestation.

Had the testator provided for distribution twenty-one years after all lives in being had terminated, he would have set up a classical example of a legal and orthodox limitation, over which there could be no meritorious dispute. Instead of so doing, he directs that the principal be paid "to each of my grandchildren, in equal proportion, when the youngest of my grandchildren then living shall have reached the age of twenty-five." However, this is not fatal to the interest of the grandchildren.

The rule against perpetuities is concerned with the vesting of interests. Provided the interest cannot vest beyond the time provided by the rule, it is immaterial that the actual possession or enjoyment may be deferred beyond the legal period. *Hoadley vs. Beardsley,* 89 Conn. 270, 279; *Shepard vs. Union & New Haven Trust Co.,* 106 id. 627, 635. In the *Shepard* case, distribution of one-half of the principal of a trust was postponed until the testator's grandchildren should reach the age of thirty, and of the other half until they should reach the age of fifty.

The testator has not directed distribution *if* the age of twenty-five is reached He orders it *when* that event occurs to the youngest Regardless of the validity of the substitutionary gift, his providing that issue of any grandchildren dying before the youngest then living should reach the age of twenty-five is a clear indication that the enjoyment of the fund rather than its vesting was to be postponed. In short,

the gift to the grandchildren vested at the testator's death, with enjoyment of possession postponed for a time which might extend to twenty-five years after the deaths of the three persons whose lives he selected as those in being.

I conclude, then, that the gift to the grandchildren does not violate the rule against perpetuities, but I must refuse to decide at what specific time the class closes, even though pressed to do so by the defendants. A different attitude would be required had there been filed a cross complaint seeking a declaratory judgment of the conflicting interests among the grandchildren. In the absence of such a pleading, the rights of only the plaintiff may be determined. As the possible father of afterborn children who may enter or be excluded from the class, the plaintiff undoubtedly is concerned, but his concern arises from a paternal interest and not from a legal right or privilege. Nor has he incorporated in his complaint any specific question aimed at answering the particular matter under discussion, and even had he done so, it would demand no answer. His status becomes settled when once it is determined that the rule has not been violated. Having concluded that the gift is good, regardless of which of the two events closes the class, I cannot legally solve other matters which do not affect his rights and privileges. For this reason the substitutionary gift to the issue of any deceased grandchild, if violating the rule because of remoteness, as it appears to, cannot affect the plaintiff's position. If invalid, these substitutionery gifts will be annexed to the estate of such deceased grandchildren. *Shepard vs. Union & New Haven Trust Co., supra.*

The court's refusal to get upon improper territory finds additional support from the following situation. The four living grandchildren are represented by the same counsel who appears for the unborn. This places him, it seems to me, in an inconsistent position. The court has not had the benefit of an argument specifically directed to the claim that the class closes at the deaths of the plaintiff and Mrs. Guthrie, rather than that of Mrs. Hill or that the substitutionery gifts are valid. Until another counsel is appointed to represent the unborn, it would be unfair to them to decide the date of closing or the legality of the substitutionery gifts.

The answers to the questions propounded by the plaintiff are these:

Questions 10 and 14 are answered "Yes." Questions 1, 3, 4, 6, 7, 11 and 15 are answered "No." Questions 2, 5, 8, 12, 13, 16 and 17 need no answer as they are predicated on a preceding question which has an affirmative answer. Questions 9 and 18 are not sufficiently specific to require an answer.