EZRA E. POST, EXECUTOR, *vs.* ALFRED JACKSON ET AL.

First Judicial District, Hartford, January Term, 1898. ANDREWS, C. J.,
TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

A testator gave the residue and remainder of his estate, real and per-
 sonal, "to my nephews and nieces, they being my lawful heirs."
 *Held* that the nephews and nieces took as a class and were entitled
 to a *per capita* distribution of the property so bequeathed to them.
Extrinsic evidence is inadmissible in the construction or interpretation
 of a will where the language of a testator is free from ambiguity.

[Argued January 4th—decided January 21st, 1898.]

SUIT to determine the construction of the will of Horace
Nettleton of Clinton, deceased, brought to the Superior Court
in Middlesex County and reserved by that court, *Thayer, J.,*
upon the facts alleged in the complaint and answers, for the
consideration and advice of this court.

Horace Nettleton, late of the town of Clinton, made his
will on the 14th day of January, 1892, by which he made
certain bequests and legacies. On the 2d day of December,
1893, he made a codicil, by which he changed those lega-
cies. On the 1st day of April, 1896, he made another codi-
cil, as follows: "Whereas, I, Horace Nettleton, of Clinton,
Connecticut, have by my last will and testament in writing,
duly executed, bearing date January 14th, 1892, and by a
codicil dated December 2d, 1893, given and bequeathed to
William J. Kelsey $500, Eugene H. Kelsey $500, Chauncey
N. Kelsey $500, the Methodist Episcopal Church $1,000, and
the Missionary Society of the Methodist Episcopal Church
the residue: Now I, the said Horace Nettleton, being desir-
ous of altering my said will in respect to the said legacies, do
therefore make this present writing, which I will and direct
to be annexed as a codicil to my said will, and taken as part
thereof, and I do hereby revoke all the said legacies, sections
fourth, fifth, and sixth of my said will, and the whole of
said codicil dated December 2d, 1893. And I give, devise
and bequeath to my nephews and nieces, they being my law-

ful heirs, all the rest and residue and remainder of my prop-
erty, real and personal; and I do ratify and confirm my said
will in everything except where the same is hereby revoked
and altered as aforesaid.   In witness whereof," etc.

It is alleged in the complaint that the nephews and nieces
of the testator consist of the following persons, viz: Josiah
A. Nettleton, only child of Augustus Nettleton, brother of
the testator; Annie Nettleton and Ashford Nettleton, only
children of Linus Nettleton, a brother of the testator; Al-
fred Jackson, Evelyn Jackson, and Adeline Hart, only child-
ren of Mary Jackson, a sister of the testator; John S. Net-
tleton, Warren O. Nettleton, Wilson F. Nettleton, and
Annie A. Reynolds, only children of Danforth Nettleton;
and Susan McNamar, only daughter of Alfred Nettleton, a
brother of the testator; that some of said nephews and nieces
claim that the said rest and residue, so devised and be-
queathed by said codicil, should be distributed to them *per
stirpes;* the others that it should be distributed to them *per
capita*.   All these nephews and nieces were made parties
defendant.   The complaint prayed for an adjudication of
these questions.

Alfred Jackson, and those of the defendants who claim
that there should be a *per capita* distribution, made answer
in this way: "1st. These defendants admit the allegations of
the complaint.   2d. The sister and the several brothers of
the deceased Horace Nettleton mentioned in the complaint,
died at the dates and ages as follows : Mary Jackson died
December, 1854, aged 62 years; Danforth Nettleton died
April, 1882, aged 80 years; Linus Nettleton died February,
1869, aged 79 years; Augustus Nettleton died July, 1882,
aged 87 years; Alfred Nettleton died May, 1883, aged 79
years.   Horace Nettleton, the testator, who was the young-
est child, died September 6th, 1896, aged 86 years.   He, as
well as his brothers and sister, was born at the family home
in Killingworth, Conn.   All his life he had lived either in
Killingworth, Mystic, Clinton, or Guilford, Conn.   Clinton
was his legal residence at the time of his death, and had
been so for about twenty years.   He was residing there

when the original will was made. Katherine M. Kelsey, named in the original will, was the daughter of his second wife by a former husband. The home of her family was in the house adjoining that of Horace Nettleton in Clinton. His second wife died December 31st, 1891. At the time of making the second codicil, April 1st, 1896, Horace Nettleton was residing, and had been for two or three years continuously, with his niece, Anna A. Reynolds, at her home in Guilford, and he continued to reside with his said niece until the time of his death. During the whole of said residence of said Horace Nettleton with his niece, Anna A. Reynolds, at her home in Guilford, Wilson F. Nettleton of New Haven, a nephew of said Horace Nettleton, a brother of the said Anna A. Reynolds, and a widower without children, was frequently at his sister's house in Guilford, and it was understood, before the making of the second codicil, between himself and the said Horace Nettleton, that the said Wilson F. Nettleton might be called upon at any time to help take care of his uncle, Horace, and from time to time during the residence of the said Horace at the home of Anna A. Reynolds in Guilford, Wilson F. Nettleton did assist on several occasions in taking care of him, and helped to take care of him at the time of his death. The children of Horace Nettleton had both died some years before the making of the original will, leaving no issue. The various nephews and nieces of Horace Nettleton named in the complaint, were living at the date of the original will and ever since, at the places named in the complaint, and had been living at such places many years prior to the date of the original will.

" These defendants claim an order and decree settling the construction of said will, to the effect that said fund remaining for distribution be divided among the nephews and nieces of the said Horace Nettleton, *per capita*."

Josiah A. Nettleton, and those of the defendants who claimed that there should be a *per stirpes* distribution, answered in this way : " 1. The defendants herein named admit the allegations of the complaint. 2. They also admit so much of paragraph second of the answer of Alfred Jackson

and others as alleges that the brothers and sister of the testator died prior to his death, and so much thereof as alleges that his nephews and nieces are his only heirs.    3. .The estate left by the testator to be distributed to his nephews and nieces under said will consists of $18,700 in money.    4. These defendants claim an adjudication and decree settling the construction of said will, and an order directing that the fund remaining for distribution be divided among the nephews and nieces of said Horace Nettleton, *per stirpes*."

These defendants also demurred to all of the second paragraph in the answer of Alfred Jackson et al., excepting what they had admitted, for the following reasons: "First. For the reason that parol and extrinsic evidence is not pertinent, competent or admissible in the construction or interpretation of wills; that the language used by the testator is clear, free from equivocation, ambiguity and uncertainty.    Second. Because the allegations in said paragraph furnish no guide, information or aid in the construction of said will."

*John W. Alling*, for Alfred Jackson et al., claiming a *per capita* distribution.

*Washington F. Willcox*, for Josiah A. Nettleton et al., claiming a *per stirpes* distribution.

ANDREWS, C. J.    The demurrer should have been sustained.    There is no ambiguity in the language of the codicil.    *Jackson* v. *Alsop*, 67 Conn. 249; *Woodruff* v. *Migeon*, 46 id. 236; *Patch* v. *White*, 117 U. S. 210, 224.

The language we are asked to construe is: "I give, devise and bequeath to my nephews and nieces, they being my lawful heirs, all the rest and residue and remainder of my property, real and personal."    If the language had been, I give, devise and bequeath to my nephews and nieces the rest and residue and remainder of my estate, etc., there would have been a complete disposition of the estate, and there would have been no thought other than that the testator gave his estate to his nephews and nieces as a class, and that they

each took an equal share; that is, that there should be a *per capita* distribution of the estate among them. If the language had been, I give, devise and bequeath to my lawful heirs all the rest, residue and remainder of my estate, although—as we know from the facts admitted in the answer—the estate would go to the same persons as in the former supposition, it would go to them in their character as heirs, and not in their character as nephews and nieces, and then there would be a *per stirpes* distribution among them. The attribute of being the nephews and nieces of the testator, and the attribute of being his lawful heirs, applies to the same persons. But a devise to them in the former character would produce a different result from a devise to them in the latter one. Indeed, a devise to them in the latter character would be inoperative. The statute of distribution would control. If property is left to the testator's heirs in the same manner and proportion in which they would take were there no will, the rule of law is that they take as heirs and not as devisees. The former is deemed the worthier title. *Howard* v. *Howard*, 19 Conn. 313, 318, WAITE, J. *Whitney* v. *Whitney*, 14 Mass. *88, *90; *Ellis* v. *Page*, 7 Cush. 161; *Sedgwick* v. *Minot*, 6 Allen, 171; 1 Jar. Wills, 74.

The testator having by the words first used, as above in the codicil, made a good devise to his nephews and nieces, as such, and to them as a class, it cannot be supposed that he intended by the words following that devise, to make his will wholly void. It seems reasonably clear that the testator intended to have his nephews and nieces share equally in his estate. The words " they being my lawful heirs," were used as explanatory of his reason for revoking the provisions of his original will and the first codicil. Other circumstances lead to the same conclusion. The testator was quite advanced in years; he was a widower, and childless; he had a comfortable estate; he was the last of a family of six children, all his brothers and his only sister having died before him, the last one of them in 1883; his nephews and nieces had been for more than ten years his only kindred by blood. They were all related to him in the same degree. They

would· naturally present themselves to his mind when he was preparing this last codicil, as directly related to him and each equally dear and an object of his bounty, rather than as representing to him his deceased brothers and sister. It was nephews and nieces, as such, to whom the testator gave his estate; and not to nephews and nieces as representing deceased brothers and sisters. We think the *per capita* distribution should be, made.

The Superior Court is advised that a *per capita* distribution should be ordered of the fund in the hands of the plaintiff as executor.

In this opinion the other judges concurred.