# Mitchell et al. v. Dauphin Deposit Trust Co. et al.

June 21, 1940.

Thomas A. Ballantine, Special Judge.

Trabue, Doolan, Helm & Stites, Martin J. Duffy, Jr., and Robert C. Logan for appellants.

Allen & Clarke for appellees.

OPINION OF THE COURT BY JUDGE FULTON—Reversing.

William Miller, at the age of 62, executed the will in controversy on September 6, 1859, and died on September 10, 1862, a resident of Jefferson County and the will was there probated. When the will was executed and up to the time of his death, testator's immediate family consisted of himself, his wife and his only child, Martha, who afterwards became Mrs. Norris. He was survived by both his wife and daughter. Testator had a brother and three sisters all of whom survived him but have since died leaving numerous descendants who are appellants herein. On January 30, 1937, Mrs. Norris died, a resident of Pennsylvania and by her will appointed appellees, John B. McAllister and Dauphin Deposit Trust Company, as executors of her will and as trustees of the residue of her estate.

Briefly summarized the provisions of the will were as follows:

(1) An undivided one-half of his property was given by testator to his wife, "to be held and owned by her as hereinafter limited and explained."

(2) The other one-half was given to testator's wife to be held in trust "for the sole, separate and exclusive use and benefit" of the daughter.

(3) During the joint life of the wife and daughter there was to be no division of the property but all of it was to be managed by the wife, who was to retain one-half of the net income for herself and pay the other one-half to her daughter. If the daughter married during her mother's life, the latter was empowered, if she so desired, to put the daughter in possession of such portion of the real estate as the wife thought proper, but the daughter was prohibited from selling or conveying any part thereof.

(4) Upon the wife's death, her half of the property was given to the daughter, if living, or, if not, to her descendants, if any, but if the wife survived the daughter, the wife's half was to be hers in fee simple.

The fifth clause of the will, which gives rise to this controversy, is as follows:

"If my daughter shall die without children or descendants then the estate herein devised for her use and benefit shall go to my heirs at law as the same would descend from me."

By the sixth clause of the will the wife was appointed executrix and authorized to appoint, either by deed or will, a trustee to act as her successor.

This action was filed by those persons who were the collateral heirs at law of the testator at the time of the daughter's death seeking a construction of the will. The trial court adjudged that the appellee Lincoln Bank and Trust Company, ancillary administrator of the estate of Martha Miller Norris, was entitled to receive from the appellee Fidelity and Columbia Trust Company, trustee under the will of William Miller, all the personal property held by it in that capacity and that the appellee Dauphin Deposit Trust Company and John D. McAllister, residuary devisees under the will of Martha Miller Norris, were entitled to all the real estate held by the trustee under the will of William Miller and authorized the trustee to transfer the real and personal estate in its hands accordingly. The present appeal is prosecuted from that judgment.

It is the contention of appellants, descendants of the brothers and sisters of the testator, that they, as heirs at

law of the testator living at the time of the death of Mrs. Norris, are entitled to the one-half of the estate devised and bequeathed under the fifth clause of the will.

Appellees, on the contrary, claim that appellants took no interest under the will but that the personal representatives and devisees of Mrs. Norris are entitled to the property for one or more of the following reasons:

(1) That Mrs. Norris took under the will a defeasible fee and that there was no gift in remainder, either to her descendants or to the testator's heirs but, at most, an executory devise to the latter to take effect only upon the defeat of her fee by her death without issue and that the gift to testator's heirs in that event was ineffectual for any purpose, because under the doctrine of "worthier title," which they claim prevails in Kentucky, his heirs would take the property, not as purchasers under the will, but as reversioners under the statute of descent and distribution.

(2) That even though testator's heirs took as purchasers under the will, nevertheless Mrs. Norris was the person entitled to take because (a) testator's reference to the daughter's death without issue meant her death during his life; or, if not, (b) the "heirs" were the surviving persons entitled at his death to take his intestate property under the statute and Mrs. Norris was the only person who answered that description.

(c) Testator's reference to the daughter's death without issue meant her death before the division of his estate, which was postponed until his widow's death by the third clause of the will.

When considered without regard to rules of substantive law or construction and in light of the fact that the will speaks as of the testator's death, it appears to us that the clause of the will in controversy should be construed as meaning that if the daughter died without surviving descendants then the estate devised to her should at her death go to those persons who would have been the heirs at law of the testator if he had survived his daughter and died immediately after her death.

Had the testator merely limited the devise after the termination of his daughter's estate to his heirs there would be more room for doubt as to whether he had reference to his heirs at the time of his death but the use

of the words "as the same would descend from me" appears to us to indicate that he had reference to a class of persons who would be his heirs at a time beyond the date of his death. We will consider whether or not any settled rule of law or construction demands a construction different from that indicated.

In Washburn on Real Property, 5th Ed., page 807, is found this statement of the common law:

> "At common law, if a man seized of an estate limited it to one for life, remainder to his own right heirs, they would take, not as remaindermen, but as reversioners; and it would be moreover competent for him, as being himself the reversioner, after making such a limitation, to grant away the reversion. And where he made the limitation after a life estate to his own heirs by will, they took as reversioners, and not as purchasers."

The first sentence in the quoted paragraph is declaratory of the law often referred to as the doctrine of reversions (at least it has been so denominated in our state), while the second sentence is expressive of a particular application of the so called doctrine of "worthier title." That doctrine was that if one is given by will the same interest in quantity and quality which he would have taken in event of intestacy, he takes by descent, not under the will, for the law gives the worthier title. In short, he takes by inheritance and not by purchase.

The doctrine of worthier title was abolished in England by Statute 3 and 4, Wm. IV, c. 106 in the year 1833 and the same statute probably abolished that which we have referred to as the doctrine of reversions. The common law of England in force prior to the year 1833 became, of course, the law of this state but prior to the adoption of the English statute referred to no declaration of the common law on these subjects had ever been made in our state. When the question of reversions was first presented in our state in the year 1883, in Alexander, etc., v. De Kermel, etc., 81 Ky. 345, our court adopted the common law rule rather than the rule as modified by the English statute and declared that the common law doctrine of reversions prevails in this state. The first sentence in the quoted paragraph from Washburn on Real Property was cited as expressive of the doctrine. This case has been followed in a long line

of decisions including Pryor v. Castleman, 7 S. W. 892, 9 Ky. Law Rep. 967; Whayne v. Davis, 66 S. W. 827, 23 Ky. Law Rep. 2174; Mayes v. Kuykendall, Ky., 112 S. W. 673; Coomes v. Frey, 141 Ky. 740, 133 S. W. 758; Nuckols v. Davis, 188 Ky. 215, 221 S. W. 507; Fidelity & C. Trust Co. v. Williams, 268 Ky. 671, 105 S. W. (2d) 814; Dooley v. Goodwin, 93 S. W. 47, 29 Ky. Law Rep. 295. In the following cases the question was apparently not presented for decision by the court but in any event the doctrine of reversions was ignored. Anderson v. Kemper, 116 Ky. 339, 76 S. W. 122; Frank Fehr Brewing Co. v. Johnston, 97 S. W. 1107, 30 Ky. Law Rep. 211; Mills v. Mills, 261 Ky. 190, 87 S. W. (2d) 389, later appeal in 275 Ky. 431, 121 S. W. (2d) 962. We may say therefore that the doctrine referred to in many of these cases as the doctrine of reversions has become firmly ingrained in the law of our state and there is more or less a sound basis for it as is revealed by an examination of the cases above cited. It will be observed, however, that all the foregoing cases deal with inter vivos conveyances and stand on a different footing from will cases.

We find, however, that in McIlvaine et al. v. Robson, 161 Ky. 616, 171 S. W. 413, the analogous doctrine of worthier title was declared. In that case there was a devise to W (a child) and his wife for their joint lives and, upon the death of the survivor of them, to revert to testator's heirs, and the testator declared that this was all the provision he intended to make for W, who was excluded from the equal division of the estate among the other children. It was held that the heirs took the same estate as they would have taken had there been no will. In other words, the heirs took by inheritance and not by purchase and W was permitted to share equally with the other heirs, though the testator had clearly indicated his intention that he should not do so. Alexander v. De Kermel, supra, was cited as authority for this decision. As far as we can ascertain this is the only case in this state applying the doctrine of worthier title in will cases.

In the annotation to the reported case of Wilcoxen v. Owen, 237 Ala. 169, 185 So. 897, 125 A. L. R. 539, it is pointed out that while in England the doctrine, that an inter vivos conveyance to one for life, remainder to the heirs of the grantor, left a reversion in the grantor,

seemed to have been a rule of law rather than of construction, that in the United States there is little doubt that the doctrine is one of construction rather than of law. This comment is amply sustained by the cited cases. It is also pointed out that the doctrine of worthier title in the law of wills does not have much significance today in view of the rejection of the common law canons of descent and in view of the fact that a will does not speak until the death of the testator, at which time his heirs and next of kin are actually ascertainable. It is also pointed out that in Kentucky beyond any question the rule announced in Alexander v. De Kermel and other following cases is a rule of construction. Examination of the domestic cases clearly confirms this. That the doctrine of worthier title as applied to wills is an outgrowth of the feudal system, and has no place in the jurisprudence of this country, the reader is referred to an article in 24 Ill. L. Rev. 627 (1930) by Profs. Harper and Heckel, in which a complete history of the doctrine is given and in which is pointed out the many incongruities resulting from its attempted application. Section 314 in tentative Draft No. 11 of the Restatement of the Law of Property, which will appear in Volume III (not yet published), gives recognition to the rule promulgated in Alexander v. De Kermel but condemns the doctrine of worthier title as applied to wills. That section reads as follows:

"(1) When a person makes an otherwise effective inter vivos conveyance of an interest in land, or in things other than land, to his heirs or next of kin then, unless a contrary intent is found from additional language or circumstances, such conveyance to his heirs or next of kin is a nullity in the sense that it designates neither a conveyee nor the type of interest of a conveyee.

"(2) Neither a rule of construction corresponding to that stated in Subsection (1) nor a rule of law analogous thereto applies to a devise of an interest in land or in personalty."

After a careful consideration we are convinced that the doctrine of worthier title serves to hinder, rather than aid, in the ascertainment of the intention of a testator, which is the cardinal purpose in the construction of wills, and that it has no place in our jurisprudence. Accordingly, the decision in McIlvaine v. Robson, supra,

is expressly overruled to the extent that it applies that doctrine.

In view of the conclusions enunciated, the heirs at law of William Miller take as purchasers under his will and not by inheritance. This being true, it remains to determine at what period of time his heirs at law are to be ascertained. Considering in this connection subsections (a) and (b) of the second reason assigned by appellees as to their claim that Mrs. Norris was the person entitled to take under the designation of testator's heirs at law, it is necessary first to determine the character of estate taken by Mrs. Norris under the will. It is contended by appellants that she merely took a life estate with remainder to the testator's heirs at law, while appellees insist that she took a defeasible fee. There is undoubtedly much room for argument on this question but after consideration of all the language of the will and having in mind the time when the will was executed we have reached the conclusion that Mrs. Norris took a defeasible fee. At the time this will was executed (1859) it was customary to appoint a trustee to hold property for a married woman with the view of protecting her against the common law rights of her husband. It appears to us that the testator intended to give to Mrs. Norris more than a life estate and a consideration of the cases of Young's Gdn. v. Shaver's Ex'x, 186 Ky. 608, 217 S. W. 902; Fox et al. v. Van Fleet et al., 160 Ky. 796, 170 S. W. 185; Littell et al. v. Littell et al., 232 Ky. 251, 22 S. W. (2d) 612; and Kimbrell et al. v. Parmer et al., 202 Ky. 686, 261 S. W. 11; and Cooper's Adm'r v. Clarke, 192 Ky. 404, 240 S. W. 361, convince us that a defeasible fee was created in Mrs. Norris. The cases cited by appellants on this point are largely cases in which it clearly appeared from the language of the will that the testator was creating a life estate, in fact in most of them the testator used the words "life estate."

Since Mrs. Norris took a defeasible fee under the will it appears to us that Kentucky Statutes, Section 2344 as construed in Harvey v. Bell, 118 Ky. 512, 81 S. W. 671, is conclusive against appellees as to their contention that the testator's reference to his daughter's death without issue meant her death during his lifetime. Section 2344 provides that:

"Unless a different purpose be plainly expressed in the instrument, every limitation in deed or will con-

tingent upon a person dying 'without heirs,' or 'without children' or 'issue,' or other words of like import, shall be construed a limitation to take effect when such person shall die, unless the object on which the contingency is made to depend is then living, or, if a child of his body, such child be born within ten months next thereafter.''

In construing this section of the Statutes four rules were laid down in Harvey v. Bell, supra, and confirmed in Atkinson et al. v. Kern, Trustee, et al., 210 Ky. 824, 276 S. W. 977, 978, and these cases have been followed in many later ones. The fourth rule we refer to was stated as follows:

" '(4) On the contrary, where there is no intervening estate, and no other period to which the words "dying without issue" can be reasonably said to have reference, they are held in the absence of something in the will showing a contrary purpose, to create a defeasible fee which may be defeated by the death of the devisee at any time without issue surviving him.' ''

It was pointed out, however, that the rules were applicable to devises of real estate and not generally to personal estate, but it was also pointed out that where both realty and personalty were involved and where both were, by the will, placed in the hands of a trustee, the personalty stood on the same footing as the realty. It is insisted by appellees that the case of Ireland v. Cooper, 211 Ky. 323, 277 S. W. 483, is controlling of the fact that the use of the words in the will "if my daughter shall die without children or descendants" referred to death during the life of the testator both as to personalty and realty. In that case there were bequests of personalty and devises of realty to different persons and the court pointed out that as to personalty the rule was that the dying without issue had reference to the death of the legatee before the testator but as to realty it referred to the death of the devisee at any time. The court in that case found that the will manifested that the testator had in mind one and the same period for a death without issue as to both personalty and realty and, having then found that the will plainly indicated an intention to give the same character of title both as to realty and personalty and that the testator did not intend that the personalty should revert upon the death

of the legatee without issue at any time, it necessarily held that the testator did not intend that the realty should revert upon the death of the devisee without issue at any time. However, in Ryan et al. v. Ball et al., 267 Ky. 83, 101 S. W. (2d) 187, the general rule stated in Harvey v. Bell was followed and it was held that where the personal and real property were not separated but devised as a whole and where no intention or purpose of making an absolute devise as to one class of property and limiting the interest devised as to another class appeared, both classes of property must be governed by the real estate rule and it was pointed out that in Ireland v. Cooper there was a separation of the two classes of property. In the instant case there was no separation of realty and personalty, both being placed in the hands of the trustee under the same devise to one person and in these circumstances clearly the real estate rule must prevail and the clause of the will in controversy must be construed to mean a death of the daughter at any time without issue.

Having reached the conclusion that the testator had reference to his daughter's death at any time, it remains to determine whether the testator by the use of the words "my heirs at law as the same would descend from me" had reference to a class to be determined as of the date of his death or as of the date of the daughter's death.

Undoubtedly the authorities are in confusion on this point. Many authorities are cited by appellees sustaining the position taken by them that when a testator makes a provision for a gift to a class and provides that the property shall be distributed among the class after the testator's death, or upon the happening of a future event, the class must be determined as of the death of the testator unless the will plainly indicates otherwise, and that this rule applies where the class is composed of the "heirs" of the testator. The principal authorities relied on to sustain this position are Page on Wills (2d Ed., Ch. XXV, page 926) and Himmel v. Himmel's Ex'r, 294 Ill. 557, 128 N. E. 641, and many cases referred to in the annotation to that case appearing in 13 A. L. R. 615. Authorities sustaining the position of appellant that the heirs are to be determined as of the death of the first taker are Welch v. Brimmer, 169 Mass. 204, 47 N. E. 699; In re Bishop's Estate, 126 Misc. 722,

215 N. Y. S. 237; Irvine v. Ross, 339 Mo. 692, 98 S. W. (2d) 763; Heard et al. v. Reed et al., 169 Mass. 216, 47 N. E. 778, 779; Union & New Haven Trust Co. v. Ackerman, 114 Conn. 152, 158 A. 224; Boston Safety Deposit & Trust Company v. Waite et al., 278 Mass. 244, 179 N. E. 624. After all, the decisions in these cases pro and con are merely declaratory of rules of construction applied in the effort to ascertain the intention of the testator. In Welch v. Brimmer the court said [169 Mass. 204, 47 N. E. 702]:

> "A testator can provide that by such an executory devise the property shall pass to his heirs as of the time of his death, or to his heirs as of the time of the death of the first devisee; but the nature of an executory devise, and the fact that the estate is a fee, furnishes a somewhat stronger reason for holding that the heirs are to be determined as of the time of the death of the first taker than when the first taker has only a life estate, and the devise is of a remainder."

The reasoning of the Massachusetts court appears to us to be sound and logical. Added to this reasoning in the instant case is the fact that the effect of a construction that the testator had reference to his heirs at the time of his death would be to convert the estate devised to hi.. daughter into a fee simple, when obviously the testator had no such intention, because the daughter, being the sole member of the class, would take under the executory devise and thereby be vested with a fee simple title under the will. It is true as pointed out in the annotation to Himmel v. Himmel in 13 A. L. R. 615 that the weight of authority is that the fact that, at the time of the making of the will, the person to whom a particular estate is given will presumably be at the testator's death, the sole member of the class to whom the same property is limited is not of itself sufficient to overcome the presumption that the membership of the class is to be ascertained at the testator's death. Nevertheless, there are many authorities to the contrary. Union & N. H. Trust Co. v. Ackerman, supra; Fargo v. Miller, 150 Mass. 225, 22 N. E. 1003, 5 L. R. A. 690; In re Churchill's Estate, 230 Mich. 148, 203 N. W. 118; Lander's Inv. Co. v. Brown, 300 Mo. 348, 254 S. W. 14, 30 A. L. R. 908; Pinkham v. Blair, 57 N. H. 226; Oleson v. Somogyi, 90 N. J. Eq. 342, 107 A. 798; Genung v. Best,

100 N. J. Eq. 250, 135 A. 514; Grantham v. Jinnette, 177 N. C. 229, 98 S. E. 724; *In re* McKee's Estate, 198 Pa. 255, 47 A. 993. Without taking a definite stand on this controversial question, we may say that; at least, this fact is entitled to be accorded considerable weight in arriving at the testator's intention. It would seem rather illogical to construe the will to mean that the testator intended to give to his daughter the estate in fee if she survived him and then if the daughter died leaving no issue surviving her to divest her of it in order to give it back to her in fee under the designation of "heirs at law." Further, the use of the plural "heirs" has some bearing in indicating that the testator was not referring to his daughter who, in the circumstances, would most probably be the only heir at law at the time of his death. Also we may take into consideration the fact that the draftsman of the will was well versed in legal terminology. If he had used only the words "heirs at law" there would be more room for doubt but these words were followed by the words "as the same would descend from me." These latter words had a meaning. If he referred to heirs at law at the time of the testator's death, they were useless and meaningless. We think the addition of those words indicates that he was referring to a class who would be his heirs at a point of time (the date of his daughter's death) beyond his own death.

In view of the authorities cited and the considerations stated we have reached the conclusion that the testator's heirs at law who take by purchase under the will are to be determined as of the date of the death of the daughter. In this conclusion we are apparently supported by the domestic case of Bacon v. Dickinson et al., 199 Ky. 121, 250 S. W. 807, though it must be admitted that the opinion is written in rather an ipse dixit manner. In that case there was a devise to a son with provision that if the son should die without legitimate bodily heirs the land should revert to the heirs of testator. It was held that the son took a defeasible fee subject to be defeated by his death at any time without issue living and it was further held that on such defeasance the title would vest in those who would be the heirs at law of the testator at the time of the son's death.

We do not attach much importance to the appellee's contention that the testator's reference to his daughter's

death without issue meant her death before the division of his estate. In support of this position the appellees rely on the third rule in Harvey v. Bell, supra, which is to the effect that where there is a devise to a class and the period of division is postponed the limitation as to dying without issue must be confined to a death without issue before the period of division fixed by the will. In the instant case we are dealing only with the title to the one-half of testator's estate given to his daughter as limited by the fifth clause of the will. As to this one-half there was to be no division—the only division mentioned in the will is the division of the estate into two parts between the wife and daughter. Very clearly the third rule in Harvey v. Bell has no application in this case.

The judgment of the lower court is reversed with directions to enter a judgment in conformity with this opinion.