C. M. Beem et al., plaintiffs-appellees, v. Ruth Beem et al., defendants-appellees; D. O. Brown et al., appellants.

No. 47583.

(Reported in 41 N.W. 2d 107)

February 7, 1950.

Edwin Willcockson, of Sigourney, for D. O. Brown, Helen Bruce Robinson, Margaret Long McKissick, and Gladys Long Snyder, appellants.

Havner & Powers, of Des Moines, for plaintiffs-appellees.

SMITH, J.—Marshall T. Beem died leaving a purported will which, after directing payment of debts and funeral expenses, gave everything to his wife who predeceased him. Administration on his estate was almost immediately taken out and an administrator was appointed and qualified.

Somewhat later this instrument was filed, a date set for probate hearing and probate notice given. The present case is a suit to enjoin such probate. It is brought by certain heirs of decedent. His other heirs are named as defendants. The heirs of Mrs. Beem are the appealing defendants. They moved to transfer the cause to probate, their motion was denied, and they have appealed from that interlocutory order.

Leave to appeal however was granted with the understanding that the respective claims of the parties "may all be determined and the controversy fully disposed of on the interlocutory appeal."

These claims may be thus stated: Plaintiffs allege decedent left no issue, that his estate is less than $7,500 in value and that even had Mrs. Beem survived him the instrument would have been a nullity since it gave her exactly what she would have received under the statute (section 636.32, Code of 1946) had he died intestate. They contend that under the "worthier title" doctrine she would have taken by the statute and not by the will.

Defendants deny this conclusion and urge their rights under the "antilapse" statute (Code section 633.16) they being heirs of the predeceased devisee. They argue the "worthier title" doctrine does not apply under the language of this will.

Under the terms of the grant of leave to appeal we shall consider the motion to transfer as also one to dismiss, in the nature of a demurrer, confessing the truth of the factual allegations of the petition.

Of course the scope of the appeal thus goes beyond the narrow question of transferability passed on by the trial court and to that extent a part of this opinion is in the nature of premature dictum. The method seems practical however since the question of the sufficiency of the allegations of the petition is bound to arise in whatever forum tried. It has been argued here and the facts are probably not in material dispute. ·

I. Plaintiffs argue that this is neither a will contest nor an action for construction, and that they do not deny the instrument was properly executed and witnessed or that the testator was of sound mind. They assert the will is clear, specific and unambiguous and not subject to construction. They merely claim that under the facts alleged in their petition the will was a nullity and that if "filed" (probated) would create "a cloud upon the property belonging to the heirs of Marshall T. Beem," that is, the property that they claim is theirs by inheritance from decedent.

On the procedural question plaintiffs' argument is based principally, if not solely, on Child v. Smith, 225 Iowa 1205, 282 N.W. 316, in which the power of equity was successfully invoked to prevent probating of a will which was alleged to be in violation of a contract between testator and his wife because of mutual wills previously made by them. His wife had died first and her will was probated. He then sought to make testamentary disposition of his property in a way different from the provisions of their mutual wills. It was held this would be a violation of their contract and would constitute a fraud upon the rights of plaintiffs.

In that case there was a contract to be specifically enforced (an inherent equitable remedy) and a threatened fraud to be averted, a matter peculiarly of equitable cognizance. There was no showing or claim that plaintiffs could have had complete relief in any other forum, and there was no effort made to transfer the case to probate.

The case is therefore of no assistance to us here where there was no distinctively equitable issue involved, no contract to be specifically enforced, no threatened fraud to enjoin; and where was made a motion to transfer to probate—that branch of the

court expressly reserved for the probate of wills and the administration of estates.

In the cited Child case none of these questions was passed on. The defendants merely contended parol evidence was inadmissible to vary the terms of the wife's will which gave the property • to her husband "in plain and unambiguous language." That was the gist of the case which was ruled by both trial and supreme courts adversely to defendants' contention there.

Though defendants-appellants here use the term "jurisdiction" we do not deem this a true jurisdictional question. Equity, law, probate are all functions of our district court. Of course, where *separate* courts are established to handle different types of cases a jurisdictional question arises in determining which court to enter. That is not true in our judicial system. *Our district court* is expressly granted "original and exclusive jurisdiction" to "probate the wills of, and to grant administration upon the estates of, all persons * * *." Section 604.3, Code of 1946. It also entertains jurisdiction of civil and criminal cases. Code section 604.1. The probate court is merely a branch or division of the district court—merely the district court acting in a particular capacity. In the Code chapter on "Probate Court" the very first section provides: "The district court [not the probate court] shall always be open for the transaction of probate business." Code section 631.1. Upon these considerations we think that whether a case should be tried in equity or law or probate is a procedural, not a jurisdictional, question.

■ Nevertheless the statutes contemplate each case should be tried in the proper division of the court by the procedure *proper to such division* and provide for transfer in event of an error as to kind of proceedings adopted. Code sections 611.7–611.9. That remedy was sought by the appealing defendants here and we are of opinion their motion to transfer should have been sustained.

■ Plaintiffs' argument that this suit is neither a will contest nor one for construction of a will is not basically accurate. They *do* seek to *prevent* probate of an instrument which they admit was properly executed by a competent testator. And they *do* ask a determination of rights thereunder and a direction as to the disposition of property of a decedent, a function of probate

and not of equity. Anderson v. Meier, 227 Iowa 38, 42, 287 N.W. 250, 252; In re Estate of Schroeder, 228 Iowa 1198, 293 N.W. 492.

In In re Estate of Warren, 211 Iowa 940, 234 N.W. 835, cited by plaintiffs, the very result sought by them here was reached in a probate proceeding, inaugurated by the administrator with will annexed who asked *construction* of the will.

Plaintiffs here had access to that same remedy. They had a plain, speedy and adequate remedy at law. They were not threatened with irreparable injury. The remedy they sought was not basically equitable but probate in character and dependent on probate, not equitable, grounds. They were not seeking to prevent cloud upon their title to property but to establish that they had title by reason of the fact that an apparent will was in fact a nullity and not entitled to probate. There was involved also not merely the title to real estate but the proper distribution of personal property to the proper persons.

In Tennant v. Smith, 173 Iowa 264, 155 N.W. 267, the plaintiffs, as heirs-at-law of decedent, brought action for construction of his will, naming as defendants his administrator and the heirs of a predeceased devisee who claimed under the wills because of the antilapse statute. There is no reason why that remedy would not have been open to plaintiffs here had the will been admitted to probate. The cases cited by plaintiffs are not authority for refusal to transfer to probate. See further as bearing on the right of a court of equity to enjoin probate, Israel v. Wolf, 100 Ga. 339, 28 S.E. 109.

II. But do the allegations of plaintiffs' petition state a cause of action? Does the will here generate or create a situation to which the "worthier title" doctrine applies?

The common-law rule originated under the old feudal system in England. It was for the protection or preservation of certain benefits flowing to the overlord which would be lost if grantor's title passed to his heirs by purchase, that is, by any method other than inheritance. A rule was accordingly developed that heirs could only take from their ancestor by inheritance. A title thus acquired was considered a "worthier title." McNeilly v. Wylie, 389 Ill. 391, 393, 59 N.E. 2d 811, 812, citing

Burby on Real Property, page 459. See also Restatement of the Law, Property, section 314, comment j (page 1785 et seq.).

The rule was abolished by statute in England in 1833. McNeilly v. Wylie, supra; Mitchell v. Dauphin Deposit Trust Co., 283 Ky. 532, 142 S.W. 2d 181, 184. But in the meantime it had gained some foothold in American common law. See Gilpin v. Hollingsworth, 3 Md. 190, 56 Am. Dec. 737, and early cases cited in Post v. Jackson, 70 Conn. 283, 39 A. 151, 153. It has been rejected entirely in Kansas, see Jones v. Petrie, 156 Kan. 241, 132 P. 2d 396, 398, and in Kentucky, see Mitchell v. Dauphin Deposit Trust Co., supra.

The Supreme Court of Illinois in the McNeilly case, supra, said: "The purpose for the application of the doctrine of worthier title at common law finds no support in our law"; but points out that it is often applied in this country "as a rule of construction." And we have said: "In our opinion, there is no reason for extending this rule of law beyond its original application to devises that were of property *exactly identical* with the property the heir or spouse would have received by the laws of descent or the laws of distribution." Wehrman v. Farmers & Merchants Sav. Bk., 221 Iowa 249, 254, 259 N.W. 564, 567, 266 N.W. 290.

It is perhaps significant that the expression "worthier title" is found in neither Bouvier's (1934) nor Black's (1933) law dictionaries nor in Words and Phrases (Permanent Edition, 1940) except in the later Cumulative Pocket Part.

It is manifest the present-day doctrine differs in both meaning and purpose from the old common-law rule.

The "worthier title" doctrine has been variously stated in our Iowa decisions. In Rice v. Burkhart, 130 Iowa 520, 522, 107 N.W. 308 (cited here by plaintiffs), we find what is perhaps the earliest definition in our reports: "When property is left to the testator's heirs *in the same manner and proportion* in which they would have taken were there no will, they take as heirs, and not as devisees; the former being deemed the worthier title." (Italics supplied.) Gilpin v. Hollingsworth, supra, Post v. Jackson, supra, Davidson v. Koehler, 76 Ind. 398, and 14 Cyc. 55, are cited. These cases are cited by plaintiffs here. Later Iowa cases cited by plaintiffs use the expression "the same *quality and quantity*,"

apparently taken from Gilpin v. Hollingsworth, supra. See Tennant v. Smith, supra (173 Iowa 264); In re Estate of Warren, supra, (211 Iowa 940); In re Estate of Everett, 238 Iowa 564, 28 N.W. 2d 21. In Wehrman v. Farmers & Merchants Sav. Bk., 221 Iowa 249, 259 N.W. 564, 266 N.W. 290, the language is *"precisely the same estate"* and *"property exactly identical."*

On the other hand, Post v. Jackson, supra (at page 287 of 70 Conn., page 153 of 39 A.) uses the language above-quoted from Rice v. Burkhart, "the *same manner and proportion."* The Post v. Jackson case and Rice v. Burkhart, both supra, are cited in Herring v. Herring, 187 Iowa 593, 595, 174 N.W. 364, as is also Davidson v. Koehler, 76 Ind. 398.

In these various cases the slight difference in form of statement of the rule was perhaps not significant, since in each the estate purporting to be conveyed was in some manner expressly described or measured by reference to the law of descent itself, or the will *specifically* gave the exact quantity or estate the beneficiary would *in any event* have taken under the law in case of intestacy. For example, in the Tennant case the husband was given " 'such share * * * as he is entitled to have and receive under the laws of * * * Iowa' "; In the Herring case, " 'all that share or part of my estate * * * which would go to him under the statute * * * if I should die intestate' "; In the Warren case where testator was unmarried and left no father or lineal descendants, " 'To my mother * * * I give all my property * * *' "; In the Wehrman case (in which the "worthier title" doctrine was rejected because the devisee was required to deposit $50 for cemetery lot upkeep) the testator, a widower gave everything to his only descendant, a daughter who predeceased him.

In no case cited or that we have found has the question arisen where the language of the will gave what merely happened, by reason of circumstances existing at testator's death, to coincide exactly with what would have passed had decedent died intestate.

It is sometimes said that under the present doctrine the provision of the will is void *ab initio.* In re Estate of Warren, supra (211 Iowa, page 944), citing 6 Greenleaf's Cruise on Real Property, Title 38, chapter 8, section 2. And in the same case

(at page 948) we said: "While, as a general rule, a will is said to speak as of, or from, the death of the testator, yet this relates to the effect and operation of the instrument; but the will should be construed as of the date of its execution. In re Estate of Best, 206 Iowa 786."

The language and reasoning of our various cases cannot in all respects be reconciled. We have said (and it was doubtless originally true under the common law of England) that the "worthier title" doctrine is "a definite, positive, and universally recognized rule of law." In re Estate of Warren, supra (211 Iowa, page 949).

And yet, when it has been invoked to prevent operation of the antilapse statute (which, by its language, operates "unless from the terms of the will a contrary intent is manifest", Code section 633.16), we have discussed the devise as indicating, under the doctrine, an *intention* of the testator that the (antilapse) statute is not to apply. Tennant v. Smith, supra (173 Iowa, page 266); Herring v. Herring, supra (187 Iowa, page 596); In re Estate of Schroeder, supra (228 Iowa, pages 1205–1207). "We have said the fact that the will makes the identical provision for the spouse or heir the law makes in event of intestacy is deemed sufficient evidence of the testator's intent that the devise should lapse if the beneficiary predecease him." In re Estate of Everett, supra (238 Iowa, page 567), citing numerous cases. This can only mean that the *language of the will* must be looked to and not a subsequent fortuitous coincidence in result between the devise and the applicable distribution or descent statute.

There is, in fact, some incongruity between the original "worthier title" doctrine (a rule of law to *defeat* intention) and the antilapse statute, the operation of which is dependent on intent. The Court of Appeals of Kentucky, in rejecting the "worthier title" doctrine recognizes that it "serves to hinder, rather than aid, in the ascertainment of the intention of a testator, which is the cardinal purpose in the construction of wills." Mitchell v. Dauphin Deposit Trust Co., supra (283 Ky. at page 538, 142 S.W. 2d, page 184).

And the annotation in 125 A. L. R. 549 concludes that since "a will does not speak until the death of the testator, at which time his heirs and next of kin are actually ascertainable, the

doctrine of 'worthier title' in the law of wills does not have much significance today." We seem to have met these difficulties by using the doctrine in determining whether the devise shows "an intent," preventing operation of the antilapse statute.

As a result when the operation of the antilapse statute is in question, application of the "worthier title" rule must depend on whether the *language of the devise* reveals a coincidence with the *language of the distribution statute* effective in case of intestacy. The "contrary intent" must be "manifest from the terms of the will." If intent is to be shown by resort to the doctrine of "worthier title" it must be based on the language of the devise (which testator knows and is presumed to intend) and not on a later chance coincidence which he perhaps could not foresee. We look to the intent of the language of the will when written and not to what happens to be its result at testator's death.

We are asked here to extend the doctrine to apply to a devise that on its face gave no intimation that it was intended to or actually would coincide with the amount which would be within the statutory amount distributable in event of intestacy. The statute gives the survivor, where there is no issue, the first $7500 (now increased by the legislature to $15,000) and one half the remainder of an intestate decedent's property (Code section 636.32).

The language of the will bears no resemblance in form or content to this statutory provision. The beneficiary is given *all* the property, not merely the first $7500 and one half the rest. The fact that at testator's death his entire estate was less than the statutory minimum does not change the terms of the will. We cannot say that the respective rights of testator's heirs and his wife's heirs depend on whether he left a net estate of less or more than $7500, or that the will was valid when executed and sometime later became void.

The original "worthier title" doctrine under English common law, as we have pointed out, bore little resemblance to the rule that now bears its name. The reason for its existence passed away and it was abolished by statute thirteen years before Iowa became a state. In its original form it had no relation to the genius of our laws.

Nevertheless we have adopted its name and have adapted its

original form to the purposes of our antilapse statute. We have attempted to make of it an instrument for determining the intent of the testator *as revealed by the will itself*, that is, his intent as of the time of execution as shown by the language he used. We have rejected extraneous considerations in ascertaining that intent. In re Estate of Schroeder, supra (228 Iowa, pages 1206–1208).

We have held the rule is to be strictly construed and that "before it can be applied, it must definitely appear that there is exact identity in every way." In re Estate of Sheeler, 226 Iowa 650, 663, 284 N.W. 799, 805.

We cannot expand its purpose further. The antilapse statute was enacted to do away with the common-law rule under which the heirs of a devisee could derive no benefit from the devise if the devisee predeceased the testator. We are unwilling to minimize the operation of the statute by any further extension of the "worthier title" doctrine.

The decision of the trial court must be reversed and under the terms of submission the case dismissed.—Reversed.

BLISS, C. J., and HALE, GARFIELD, MANTZ, WENNERSTRUM, and MULRONEY, JJ., concur.

OLIVER, J., takes no part.