**In the Matter of the ESTATE of Annie I. KERN, Deceased.**

**No. 61190.**

Supreme Court of Iowa.

Jan. 24, 1979.

Richard S. Bordwell, Washington, for appellant guardian ad litem.

D. Bradley Kiesey, Washington, for appellant Norma Hesseltine.

Stewart, Shearer & Tindal, Washington, for appellee executor.

UHLENHOPP, Justice.

This appeal involves an attack upon the testamentary branch of the worthier title doctrine in the context of the antilapse statute, § 633.273, Iowa Probate Code.

Testatrix Annie I. Kern and her predeceased husband had but one descendant, their son Ralph Kern. Testatrix made a will giving all of her property to Ralph, who thereafter died unmarried. Testatrix died subsequent to Ralph's death, and her will was admitted to probate.

The collateral heirs of testatrix' deceased husband claim that testatrix' property is to be divided among Ralph's heirs. If so, half of the property would go to the collateral heirs of Ralph's father and half to the collateral heirs of Ralph's mother, testatrix, pursuant to the antilapse statute. That statute provides:

If a devisee die before the testator, his heirs shall inherit the property devised to him, unless from the terms of the will, the intent is clear and explicit to the contrary.

Testatrix' collateral heirs contend that the property is to be divided entirely among them under the judicially-created worthier title doctrine, citing *In re Estate of Warren*, 211 Iowa 940, 234 N.W. 835. Under that doctrine a devise in the same quantity and quality as the devisee would take by descent is void. If the devisee survives the testator he takes as heir. If he does not so survive, the property goes as though the devise had never been made. As a result the worthier title doctrine sometimes nullifies application of the antilapse statute.

Application of the doctrine here would give all of testatrix' property to her collateral heirs, rather than to her heirs and her predeceased husband's heirs. The probate court held that the property passed entirely to testatrix' heirs, applying the *Warren* case. Ralph's heirs on his father's side appealed.

The present case is a classic one for application of the worthier title doctrine, and the *Warren* decision controls the result if we adhere to it. But Ralph's heirs on his father's side mount a frontal attack on the doctrine. The time has arrived for us to reexamine the doctrine as applied in cases involving the antilapse statute. We leave other types of cases involving the doctrine to future consideration.

I. The scholars have little good to say about the doctrine. They assert that it is purely a technical principle, it frustrates testamentary intent and antilapse enactments, and it creates confusing and contradictory results in application. Morris, The Wills Branch of the Worthier Title Doctrine, 54 Mich.L.Rev. 451; Harper & Heckel, The Doctrine of Worthier Title, 24 Ill.L. Rev. 627; Johanson, Reversions, Remainders, and the Doctrine of Worthier Title, 45 Texas L.Rev. 1 (inter vivos application). Iowa commentators are similarly unenthusiastic about the doctrine. Comment, 16 Iowa L.Rev. 559 ("This so-called rule of 'worthier title,' though it may often be restated, seems obsolete."); Comment, 39 Iowa L.Rev. 199, 202 ("It is hoped that the Iowa court will eliminate this antiquated doctrine from the Iowa law."). See also Note, 46 Harv.L.Rev. 993, 998. Professors Harper and Heckel cite undesirable results and say of the doctrine on page 655 of their article:

Obviously the real pragmatic considerations which occasioned its development have long since ceased to exist. But a vestige, a survival of ancient legal theory, it serves no genuine social purpose, if accurately applied. So long as courts continue to pay it lip service, in blind and complacent adulation, we may expect many such incongruous and unsatisfactory situations.

Morris says of the wills branch of the doctrine in his article in 54 Michigan Law Review 451, 495:

What meritorious arguments can be made in favor of the wills branch of the worthier title doctrine? The writer can think of none. The rule invites litigation, ensnares the unwary draftsman and frustrates the wary draftsman. As a rule of law it applies to devises made to people who are the most natural objects of the testator's bounty. To the writer's knowledge, every man who has taken up the pen to write on the policy aspects of the rule has concluded that it has no place in our law.

In rejecting the doctrine in Kentucky, the Court of Appeals of that state concluded:

After a careful consideration we are convinced that the doctrine of worthier title serves to hinder, rather than aid, in the ascertainment of the intention of a testator, which is the cardinal purpose in the construction of wills, and that it has no place in our jurisprudence. *Mitchell v. Dauphin Deposit Trust Co.*, 283 Ky. 532, 538, 142 S.W.2d 181, 184.

The American Law Institute, expressing the statutory and decisional trend in this country, has taken the position that the worthier title doctrine applies to inter vivos conveyances but not to testamentary devis-

es. Restatement, Property, § 314(2) and Comment *j*. England abolished the testamentary worthier title doctrine by statute in 1833. 3 & 4 Will. IV, ch. 106, § 3. See also *Lucas v. Parsons*, 24 Ga. 640, 659 ("The reason of the rule in England . . . does not apply in this state."); *Bunting v. Speek*, 41 Kan. 424, 21 P. 288; *Besche v. Murphy*, 190 Md. 539, 59 A.2d 499; *In re Sewart's Estate*, 342 Mich. 491, 70 N.W.2d 732; *Stone v. Bucklin*, 69 R.I. 274, 32 A.2d 614; *Estate of Pfaff*, 41 Wis.2d 159, 163 N.W.2d 140.

II. The doctrine originally had a practical purpose: under the feudal system, if real property passed by law the lord retained benefits which were lost if the property passed by will. As stated in Restatement, supra, Comment *j*, "This rule originated under the feudal system to preserve the feudal incidents of relief, wardship and marriage. These incidents were preserved only if the new tenant of land acquired his interest by descent from the former tenant, rather than by purchase under the terms of a devise." The Institute adds, "The reason which caused the origin of this rule no longer exists." This court itself stated in *Beem v. Beem*, 241 Iowa 247, 251–252, 41 N.W.2d 107, 110:

> The common-law rule originated under the old feudal system in England. It was for the protection or preservation of certain benefits flowing to the overlord which would be lost if grantor's title passed to his heirs by purchase, that is, by any method other than inheritance. A rule was accordingly developed that heirs could only take from their ancestor by inheritance. A title thus acquired was considered a 'worthier title.' . . .
> The rule was abolished by statute in England in 1833. . . . But in the meantime it had gained some foothold in American common law.

III. The Iowa decisions illustrate the frustrating effect of the doctrine when applied to negate application of the Iowa antilapse statute. Conscious of this effect, this court has drawn minute distinctions to remove cases from the operation of the doctrine. The principal cases involving the doctrine in the antilapse statute setting are *Tennant v. Smith*, 173 Iowa 264, 155 N.W. 267 (inter-spousal devise; doctrine applied); *Herring v. Herring*, 187 Iowa 593, 174 N.W. 364 (similar); *In re Will of Watenpaugh*, 192 Iowa 1178, 186 N.W. 198 (devise and inheritance found not identical; doctrine not applied); *In re Estate of Davis*, 204 Iowa 1231, 213 N.W. 395 (same); *In re Estate of Warren*, 211 Iowa 940, 234 N.W. 835 (facts similar to present case; doctrine applied); *Wehrman v. Farmers' & Merchants' Savings Bank*, 221 Iowa 249, 259 N.W. 564 (will and inheritance not identical, daughter to receive $50 for care of cemetery lot in addition to regular share; doctrine not applied); *In re Estate of Schroeder*, 228 Iowa 1198, 293 N.W. 492 (devise and descent not identical; doctrine not applied); *In re Estate of Everett*, 238 Iowa 564, 28 N.W.2d 21 (same); *Beem v. Beem*, 241 Iowa 247, 41 N.W.2d 107 (will gave devisees exactly what they would have received under statute but verbiage of will and statute not same; doctrine not applied); *In re Estate of Coleman*, 242 Iowa 1096, 49 N.W.2d 517 (devise and descent not identical; doctrine inapplicable); and *In re Estate of Miller*, 243 Iowa 920, 54 N.W.2d 433 (doctrine applied on facts similar to *Beem* case).

IV. In support of the worthier title doctrine, testatrix' heirs argue that since testatrix outlived Ralph, she would likely have desired to have her property remain with her side of the house, rather than go half to her side and half to her deceased husband's side. But how do we know this? The husband's heirs can argue plausibly that testatrix and her husband may have accumulated this property together and therefore may have wanted it divided between the two sides. If Ralph had survived testatrix by as little as a day and died intestate, the property would have gone to both sides. Testatrix' heirs are really arguing against the policy of the antilapse statute itself, wherein the legislature abolishes the common-law lapse rule and presumes that a testator normally desires the gift to go to the devisee's heirs.

Testatrix' heirs also present the familiar argument that blood is thicker than water: a testator would rather have his property stay with those of his own blood than go to the heirs of the predeceased devisee. One illustration demonstrates that this argument contradicts the policy of the antilapse statute favoring the devisee's heirs: if the predeceasing devisee is not an heir of the testator, the worthier title doctrine does not apply, the antilapse statute does, and the property goes to the devisee's heirs—who may be complete strangers to the testator's blood. Yet, according to testatrix' heirs, if the predeceasing devisee happens to be an heir of the testator, the devisee's heirs may be cut off by the doctrine. Here again testatrix' heirs are really arguing against the policy of the antilapse statute.

V. Our most difficult problem with the worthier title doctrine is in trying to square it with the strong language of the antilapse statute. The statute makes no express exception for the case of the devisee who is an heir of the testator. To uphold the worthier title doctrine in that framework we must read the doctrine into the only exception which the statute contains: the predeceasing devisee's heirs take "unless from the terms of the will, the intent is clear and explicit to the contrary." (See also §§ 633.-271 and 633.274.) We must say, merely from the circumstance the devise happens to be the same as the inheritance, that the will is "clear" and "explicit" the testator intended the predeceased devisee's heirs not to take. We are no longer able to make that long leap successfully. We thus abrogate the worthier title doctrine in antilapse statute situations.

VI. The worthier title doctrine is a rule of property, and we abrogate it prospectively only. See *Great Northern Ry. v. Sunburst Oil & Refining Co.*, 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360; *State v. Martin*, 217 N.W.2d 536 (Iowa); 20 Am.Jur.2d Courts § 233 at 562; 21 C.J.S. Courts § 194 at 327. Today's holding thus applies only to the present will, to wills in cases now pending in which the issue is properly raised, and to wills executed after the day we file

this opinion. The worthier title doctrine, if otherwise applicable under our prior pronouncements, applies to other wills.

In the present case testatrix' property passes under her will and the antilapse statute to Ralph's heirs.

REVERSED.

All Justices concur except McGIVERIN, J., who takes no part.